v.

**UNITED PARCEL SERVICE and Liberty Mutual Insurance Company,**
**Employer/Insurer/Appellant,**

and

**Robert Holden, Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Additional Party.**

No. ED 76738.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 13, 2000.

Before WILLIAM H. CRANDALL, Jr., P.J., MARY K. HOFF, J., and ROBERT E. CRIST, Sr., J.

**ORDER**

■

**B.J.D., Appellant–Respondent,**

v.

**L.A.D., Respondent–Appellant.**

No. ED 75612.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 13, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 25, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Michael A. Gross, St. Louis, for appellant.

Cary J. Mogerman, Mary E. Niemira, Clayton, for respondents.

CHARLES B. BLACKMAR, Senior Judge.

■ The parties were married on December 13, 1988, each for the second time. Wife had a daughter by her first marriage and was carrying her new husband's child at the time of the wedding. Their son, and only child, was born in the late spring of 1989. Shortly before the marriage the parties entered into a prenuptial agreement prepared by husband's attorney. Wife's attorney suggested one modification, which was agreed to. The Family Court Commissioner who presided at the trial found that the agreement had been entered into voluntarily and that it was not unconscionable. We sustain this finding.

Both parties had been trained in the accounting profession. Husband before and after the marriage had been employed by a major accounting firm but, in July 1995, he left that employment and entered into a business consulting enterprise, operating through two wholly-owned corporations. Wife had passed the CPA examination and lacked only the required period of servitude with an accounting firm to qualify as a CPA. She reduced her work involvement during her son's early years but later entered into a business venture of her own, providing trained employees to service the payrolls of small employers.

The parties separated in 1997 and filed petitions and cross-petitions for dissolution. Wife and her children moved out of the family residence and into an apartment early in 1998.

The case was heard before a Family Court Commissioner, and his judgment was routinely confirmed by the circuit judge. Both parties appeal from the judgment, but husband does not urge any points for reversal. Wife presents twelve points alleging error, most of which have some merit. We discuss the facts material to each asserted point in the subsequent sections of this opinion.

For the reasons which will appear, we reverse the judgment and remand for further proceedings consistent with our opinion. The Commissioner who presided at the trial is no longer in office, and so further hearings will necessarily proceed before another judicial officer. The points on which we find error are to some extent interrelated, and there is not very much from the initial trial that can be salvaged. Nor are there many instances in which we are able to mandate the disposition of an issue pursuant to Rule 84.14. The transcript of the first trial shall be received in evidence, and the presiding officer, judge or commissioner, may take steps to avoid duplications and redundancies.

Point I—The Time Limitation
on the Trial

The Commissioner, in May preceding the September trial, reserved two days for the trial. The record contains only the bare order, with no information about the proceedings attending its issuance. On the day of trial wife and her counsel were not present at the opening of court at 9 a.m., and the trial proceeded on husband's cross-petition. There is no indication, however, that the late appearance of wife and counsel caused any significant delay.

Husband's evidence consumed all of the first day of the allotted trial time and a good part of the morning of the second. Husband and his expert witness were cross-examined at length. At the inception of wife's case, the court warned counsel that the presentation of the evidence would conclude at 5 p.m. Wife and an expert witness testified, after which counsel testified briefly about his fees. The Commissioner then observed that the time was 4:59 p.m. Counsel stated that he had another expert witness, but the Commissioner said that the trial was over at 5 p.m. and took the case under advisement.

Several days later wife's counsel filed a written motion asking that the hearing be reopened to permit ninety minutes of direct and cross-examination of his expert witness. He advised the court that the witness, a forensic accountant, would testify as to "[husband's] manipulation of corporate funds and screening of income, an analysis of the true cash flow of [his] two corporations, and a projection of [his] 1998 income." The Commissioner overruled the motion.

■ Husband argues that the complaint about the time limit should fail for want of an offer of proof. We quite agree that a litigant who complains about the exclusion of evidence should invariably make an offer of proof, both to inform the trial court about the content of the proffered evidence and to allow an appellate court to assess the prejudicial effect of the exclusion. *Evans v. Wal–Mart Stores, Inc.,* 976 S.W.2d 582, 584 (Mo.App.1998). Here, however, the Commissioner made it clear that he did not propose to sit beyond five o'clock, and the post-hearing motion informed the Commissioner about what counsel was trying to develop with the witness. It was evident that the Commissioner would not permit an offer by question and answer as provided in Rule 73.01(a)(1). To do so would defeat the purpose of the time limitation. The point was appropriately preserved for review under the circumstances.

■ Husband cites *L.J.B. v. L.W.B.,* 921 S.W.2d 23, 27 (Mo.App.1996), for the proposition that a trial court has discretion to limit the time for presentation of evidence by a pretrial order, and that the application of this order is reviewable only for an abuse of discretion. That case is very different from this one. Three days were allowed for the trial, which time was within the limits of counsel's advance indication of the time required. Counsel failed to demonstrate that additional direct testimony or additional cross-examination would have provided anything not already developed by the record. Here, by contrast, the record was woefully deficient in several respects, as will appear from our discussion of the other points. We have no hesitation in saying that the Commissioner abused his discretion in this case by ending the trial before evidence on all essential issues was developed. The old maxim that "haste makes waste" is manifest here.

We need not base our reversal solely on the time limitation ruling because further hearings are required to flesh out the record on essential issues. At these hearings the rejected evidence may be tendered.

■ We observe at this point that time limitations should be imposed carefully and only after consultation with counsel. If the evidence on essential points cannot be fully developed within the allotted time the court must show some flexibility. Counsel are normally the best judges of the time they require to develop their cases and of the need for cross-examination, which often depends on the clarity and candor of the direct testimony. Intervention by the court may sometimes be necessary but should not be the rule. The court's primary responsibility is to see that the issues are fully presented.

### Point II—The Wholly–Owned Corporations

During the marriage husband left his employment and went into business for himself, forming two wholly-owned corpo-

rations for this purpose under the names of Community Bank Consulting Services, Inc. and Corporate Behavior Consulting Services, Inc. Wife also entered into a business of her own during the marriage, creating a wholly-owned corporation under the name of Payroll Super–Temps, Inc.[1] The Commissioner found that each of these corporations was the separate property of the sole shareholder. The judgment awarded all of the stock in Bank Consulting and Behavior Consulting to husband, and all of the stock in Payroll to wife.

■ The characterization of the three corporations as separate property is flagrant error. The corporations were formed while the parties were married and are not shown to have been capitalized with non-marital assets. Therefore, the stock of each is marital property. *Jaeger v. Jaeger*, 547 S.W.2d 207, 211 (Mo.App. 1977). Husband does not dispute this, but argues that the erroneous characterization is harmless. We do not agree.

■ The court announced a purpose of dividing the marital property equally. We approve of this purpose for the case before us. Inasmuch as the value of a substantial portion of the marital assets cannot be determined without valuing the assets, however, the court must show how it arrived at the division it decreed. Otherwise we would be unable to review the court's judgment.

Husband argues that neither party requested a valuation of the corporate stock, and that the court was not obliged to make one, citing *In re Marriage of Perkel*, 963 S.W.2d 445, 450 (Mo.App.1998). We disagree, in this particular case, for the reasons stated in the preceding paragraph.

Husband goes on to argue that it must be assumed that the court found that the stock of husband's two corporations was equal to that of wife's one corporation. Inasmuch as the Commissioner concluded

that the stock of the corporations constituted separate property, he would have had no occasion to determine any value for this stock, and it cannot be assumed that he performed an unnecessary act. Husband fails to persuade us that the mischaracterization of the stock as separate property was not prejudicial.

It might appear that husband's stock is worth much more than wife's. Certainly his business was much more remunerative. But we express no conclusion on the relative valuations, and the evidence may be further developed on remand.

### Point III—The Minnesota Mutual Life Insurance Policy

Husband at the time of the marriage owned a life insurance policy issued by the Minnesota Mutual Life Insurance Company with a cash value of $5,000. The prenuptial agreement provided that this policy was to remain husband's separate property. Husband, after the marriage, paid all premiums with marital funds. At the time of the trial, the cash value of the policy was $20,000. The Commissioner held that the prenuptial agreement confirmed husband's ownership of the policy and set it aside to him as separate property.

■ This was error. When the value of separate property is enhanced after the marriage by the application of marital funds, the increase in value is marital property, *Klaus v. Klaus*, 918 S.W.2d 407, 409 (Mo.App.1996), and must be accounted for in some way. This holding is not inconsistent with the prenuptial agreement, because husband remains the owner of the policy. But wife must receive credit in some way for the increase in cash value attributed to the use of marital property.

Husband points to the award to wife of $28,635.65 on account of increases in the value of husband's separate property by the application of marital funds. Wife asserts that this amount related to the appli-

---

1. Where appropriate, we will refer to husband's corporations as Bank Consulting and Behavior Consulting, and to wife's corporation as Payroll.

cation of marital funds to the payment of incumbrances on husband's separate real property. We find no indication in the record that the Commissioner included the increase in cash value of the insurance policy in this figure. The record may easily be clarified on remand.

### Points IV and X—Education Expenses

The parties had acquired, as their means permitted, prints and plates of works by Jesse Barnes and other artists, which they thought had the potential for substantial increase in value and agreed to use the prints to finance a college education for their son, Jonathan. The trial court awarded these prints, aside from three which husband had given to wife, to their son and named husband as custodian.

■■■ There is no warrant in the statutes governing dissolution and distribution of property for the award of property to a son for his education or otherwise. *Weiss v. Weiss*, 954 S.W.2d 456, 459 (Mo. App.1997). Nor is the court entitled to enforce a precatory understanding that certain property be used for the child's benefit. *Id.* The prints and plates were, manifestly, marital property, and the court should have dealt with them as such.

The judgment as to the prints is particularly vulnerable because the Commissioner ordered wife to bear one-half the cost of Jonathan's college education. Had the judgment as to the prints been sustainable, wife would be obliged to bear a disproportionate part of the cost of college education even though husband's earning figure appears to be far superior. The questions about education may be revisited on remand.

### Points V, VI, VII and VIII – Division of Marital Property

Wife questions the provisions of the decree relating to the division of marital assets. She alleges that assets are omitted which should have been divided or apportioned, that the decree is not clear as to how pension funds are to be divided, and that the award to each party of the marital property in his or her possession at the time of the judgment resulted in the omission of assets of substantial value from the marital estate. Wife further claims that the court erred in awarding the greater share of the marital property to husband.

Husband agrees the judgment is not a model, but asserts there has been no demonstration of prejudice. He suggests that the apportionment of property conformed to the court's announced purpose of dividing marital property equally, and that it should be assumed that the Commissioner found all facts necessary to that result.

■■■ For the reasons stated in Points II, III and IV, the case must be remanded in order to effect the valuation and distribution of marital property incorrectly characterized as separate property. The value of the property involved is substantial. Rather than discussing each item mentioned in Points V through VIII, we leave it to the trial court on remand to effect a relatively equal division of marital property, free from any determinations of the Commissioner whose ruling is under appeal. Wife may also seek to demonstrate that husband possessed assets, neither scheduled by him nor considered by the Commissioner, which were marital property. She asserts that she is prepared to make this showing through the testimony of the expert whom the Commissioner refused to hear because of the time limitation.

### Point IX – Maintenance

The Commissioner found that husband's earnings at the time of the judgment aggregated $24,346 per month and wife's $2,666 per month. He denied wife's claim for maintenance, concluding that the provisions of the prenuptial agreement precluded any award of maintenance. He commendably made an alternate finding that wife did not lack sufficient property to provide for her reasonable needs and was

able to support herself through appropriate employment, and so was not entitled to maintenance under the terms of section 452.335 RSMo 1994.[2]

 The prenuptial agreement provided that, in the event of dissolution, "the separate property of the other party shall be free from the claims of alimony, . . . maintenance and support for himself or herself. . . ." This language provides only that the separate property of the other, as defined by the agreement and the law, is not subject to execution for any such award. It does not divest the court of its statutory authority to decree maintenance pursuant to section 452.335. When a prenuptial agreement purports to inhibit remedies provided by statute, it should be rather strictly construed. *See McGilley v. McGilley*, 951 S.W.2d 632, 637 (Mo.App. 1997). The court has the authority to award maintenance if the statutory standards are met. *In re Marriage of Clarke*, 950 S.W.2d 11, 13 (Mo.App.1997).

We believe that the issue of statutory maintenance should be revisited on remand, because the implementation of our opinion and the judgment following remand may undermine the basis for the Commissioner's assumptions. The court on remand should consider the law and evidence and enter a judgment deemed appropriate.

### XI – Restoration of Maiden Name

Wife requested restoration of her maiden name, but the judgment is silent on the point. The record shows no reasonable basis for denying this request. *See Matter of Natale*, 527 S.W.2d 402 (Mo.App. 1975). Husband does not contest the request, and it should be allowed in the judgment on remand.

### XII – Attorneys' Fees

The Commissioner awarded attorneys' fees through the trial of $22,575. Wife asserts that she should be awarded the full amount of $53,778.07 billed by her attorney.

All case law emphasizes the broad discretion of the trial court to award all, some, or none of the amounts billed by counsel. *See Williams v. Williams*, 990 S.W.2d 665, 669 (Mo.App.1999); *In re Marriage of Trimble*, 978 S.W.2d 55, 58 (Mo.App.1998). We fail to perceive an abuse of discretion in the award. The Commissioner might have thought that the amounts billed were unreasonably high, that the time billed was excessive, or that wife should bear part of the burden. The court is not obliged to rubber stamp counsel's billings.

The court on remand is free to receive and rule on requests for fees for this appeal and for further proceedings in the trial court.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. The issues of validity of the prenuptial agreement and of attorneys' fees through the initial trial will not be relitigated. The court on remand will be bound by the conclusion that the marital property should be divided as equally as possible. The costs of this appeal are taxed against husband.

MARY RHODES RUSSELL, C.J., and LAWRENCE G. CRAHAN, J.

---

2. All further statutory references are to RSMo 1994 unless otherwise indicated.