**Lois Anne BRADY, Petitioner–Respondent,**

v.

**Dennis John BRADY, Respondent–Appellant.**

**Nos. ED 77293, ED 77883 and ED 77960.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 20, 2001.

**559**

Deborah J. Tomich, Jane E. Tomich, St. Charles, MO, for appellant.

Michael C. Walther, Michael A. Gross, St. Louis, MO, for respondent.

MOONEY, Presiding Judge.

Husband, Dennis John Brady, appeals from the judgment and decree dissolving his marriage to Wife, Lois Anne Brady. Husband claims the trial court erred in: (1) limiting Husband's time to present evidence at trial because he was prejudiced; (2) finding that the 173-acre farm was marital property because Wife had signed a quitclaim deed gifting all her interest in the property to him; (3) ordering partition of the 173-acre farm because the trial court did not have jurisdiction to do so; (4) awarding Wife maintenance because she can provide for her reasonable needs with property and employment; (5) ordering Husband to pay Wife half of the money he received from selling real estate and securities in 1993; and (6) ordering Husband to pay $15,000 of Wife's attorney fees from the dissolution and $7,500 of Wife's attorney fees from this appeal. We affirm.

## Facts

Husband and Wife were married on June 14, 1968. They had three children, but only one child was unemancipated at the time of trial. Husband was in dental school when he and Wife married, and Wife left college during her freshman year to work to support Husband. She never returned to college. After Husband graduated from dental school, he attended orthodontics school for approximately two years. In 1971, Husband established his own orthodontics practice, and soon, Wife began working in his office. Wife worked full-time in Husband's office performing numerous clerical and managerial tasks until their first child was born in 1973. Then, Wife reduced her hours to part-time until she left Husband's employment in 1998. In addition to working in the office, Wife entertained other dentists and their wives to help Husband build his practice through patient referrals. Wife also stayed home with the children when they were sick, washed the family's laundry and cooked all the meals throughout the marriage.

Besides the dental practice, Husband and Wife also farmed. In 1972, Husband and Wife purchased a 178–acre farm from Husband's parents for $70,000. Husband and Wife signed a note payable to Husband's parents for the entire purchase price, which they finished repaying in 1981. The deed for the 178–acre farm was in both Husband and Wife's names. When the note was satisfied, Wife executed a quitclaim deed assigning her interest in this farm to Husband. In addition, Husband and Wife borrowed $25,000 in 1974 and $45,000 in 1979 to improve the farm. They dug three lakes on the property, built a machine shed, and purchased farm equipment with the loan money. In 1987 and 1988, Wife inherited $200,000 and deposited the money in their joint checking account. Husband and Wife then used the $200,000 to pay the balance of the two farm improvement loans. In 1993, Hus-band sold five acres of the 178–acre farm, now a 173–acre farm, for $52,500.

Wife and the children routinely participated in farm work with Husband. Husband had a bad back and could not lift heavy items so Wife and the children often engaged in heavy labor tasks. Some farm chores that Wife performed include setting up a portable irrigation system, laying out and transferring irrigation pipes, and planting and harvesting crops.

## Analysis

■ We will sustain the trial court's judgment unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and the reasonable inferences therefrom in the light most favorable to the decree. *Nichols v. Nichols*, 14 S.W.3d 630, 634 (Mo.App.E.D.2000). If there is a conflict in testimony, we defer to the trial court's determination of the credibility of the witnesses. *Id.*

### Point I: Time Limitation on the Trial

■ In his first point, Husband argues that the trial court abused its discretion by waiting until the middle of the trial to announce a time limit on the proceedings, causing Husband to suffer prejudice by restricting his opportunity to present evidence. We disagree.

■ A trial court has discretion to limit the time for presentation of evidence by a pretrial order, and review of the limitation is solely for abuse of discretion. *B.J.D. v. L.A.D.*, 23 S.W.3d 793, 797 (Mo. App. E.D.2000). "Time limitations should be imposed carefully, and only after consultation with counsel." *Id.* Although husband complains of the imposition of a time limit, the gravamen of his complaint is that he was not allowed to adduce relevant evidence to his prejudice. A litigant who complains about the exclusion of evidence should make an offer of proof to inform

the trial court of the content of the proffered evidence and to allow an appellate court to determine the prejudicial effect of the exclusion. *Id.* The offer of proof must be specific and definite. *Shoemaker v. Ekunno,* 960 S.W.2d 527, 530 (Mo.App. E.D.1998).

Here, the parties agreed three months before trial that it should only take four days to adduce evidence on all the essential issues. When the trial began, both parties had notice of the four-day time limit. At the start of the third day of trial, the trial court reminded the parties of the limit. Husband's counsel objected to the imposition of the time limit because he claimed that Wife already had two full days to present her case and that she would receive a total of two days and five hours, leaving him with only five hours to present his case and cross-examine witnesses. The trial court overruled the objection. Husband's complaint is misleading because he used almost all of the second day of trial to cross-examine Wife. In addition, the trial court did consult Husband and Wife's counsel before setting a fair time limit.

■ Further, Husband failed to show precisely how he was prejudiced by the court's time limit. After the trial court overruled Husband's objection to the time limitation order, Husband had two days to make an offer of proof. At the end of the fourth day, Husband's counsel failed to make an offer of proof regarding what testimony he would adduce if given more time. He offered nothing. In the absence of prejudice, there is no reversible error. *L.J.B. v. L.W.B.,* 921 S.W.2d 23, 27 (Mo. App. E.D.1996). Point denied.

### Point II: Classification of the 173–Acre Farm

■ Husband contends the trial court abused its discretion in finding that the 173–acre farm was marital property because he showed by clear and convincing evidence that Wife gifted the farm to Husband by quitclaim deed.

■ The trial court has broad discretion in classifying marital property. *Absher v. Absher,* 841 S.W.2d 293, 294 (Mo.App. E.D.1992). Section 452.330.3 states that any property acquired after the marriage and prior to legal separation or dissolution is presumed marital property. To rebut the presumption, the attacking party must show by clear and convincing evidence that "both parties intend that the property be excluded from their marital property." *Moseley v. Moseley,* 795 S.W.2d 464, 467 (Mo.App. E.D.1990), *quoting, Rogers v. Rogers,* 573 S.W.2d 425, 426 (Mo.App.1978).

Husband testified that when he and Wife signed the note to purchase the 173–acre farm, they agreed orally that Wife would gift her interest in the property to him when the note was repaid. Wife testified that her execution of the quitclaim deed was not intended as a gift, but was part of an estate plan. Wife further testified that she and Husband executed wills on April 21, 1981. The quitclaim deed was signed on May 29, 1981. The trial court classified the 173–acre farm as marital property, subject to division under Section 452.330 RSMo. (1994).[1] In its findings and conclusions, the trial court found no gift was intended by Wife, and there was no credible evidence to support Husband's contention that the property was gifted to him.

Husband fruitlessly argues that the quitclaim deed itself constitutes clear and convincing evidence that the 173–acre farm was his separate property. To reach that conclusion, Husband would have us ignore the trial court's determination of credibility that Husband presented no credible evidence that Wife intended to make a gift to him. In its findings and conclusions, the trial court notes that in Husband's August 1998 Statement of Property, he listed the 173–acre farm as marital property. Two

---

1. All statutory references are to RSMo. (1994)   unless otherwise noted.

years later at the start of the trial, Husband amended his Statement of Property, claiming the farm as his separate property. The trial court made clear its acceptance of Wife's explanation for the quitclaim deed and its rejection of Husband's testimony. Because we view the evidence in a light favorable to the decree and defer to the trial court's credibility determinations, *Nichols,* 14 S.W.3d at 634, we find no error. Point denied.

### Point III: Partition of the 173–Acre Farm

■ Husband avers the trial court abused its discretion in that it did not have jurisdiction to partition the 173–acre farm because no separate petition for partition was filed and certain procedural requirements for a partition suit or an order of partition in kind were not satisfied. We disagree.

■ The scope of a trial court's subject-matter jurisdiction is a question of law that we review de novo. *Ryan v. Reece,* 31 S.W.3d 82, 86 (Mo.App. W.D.2000); *Boulevard Investment Co. v. Capitol Indemnity Corp.,* 27 S.W.3d 856, 858 (Mo.App. E.D. 2000). Before the Marriage Dissolution Act[2] was enacted in 1973, a court had no authority in a divorce proceeding to adjudicate the property rights of the parties. *In re Marriage of Breen,* 560 S.W.2d 358, 361 (Mo.App.1977). Instead, "upon divorce the parties became tenants in common as to all property held by the entirety during marriage, [and] a separate partition suit was needed to finally determine the property interest of each spouse." *Forsythe v. Forsythe,* 558 S.W.2d 675, 678 (Mo.App.1977). However, one purpose of the Marriage Dissolution Act "was to eliminate the need for this unsatisfactory half-remedy of partition ... and to relieve the parties from further litigation to sever altogether the property relations between them." *Id.*

■ Husband's argument is rooted in the soil of archaic legal theory; therefore, it must fail. Section 452.330 of the Marriage Dissolution Act was intended to vest trial courts with power to "divide and settle title to all property which has come to the spouses by virtue of the marriage relation." *Id.* The Act requires the trial court to completely divide all marital property in the dissolution decree unless there are unusual circumstances. Section 452.330.1; *In re Marriage of Farquhar,* 719 S.W.2d 456, 458 (Mo.App. W.D.1986). In carrying out its statutory mandate, the trial court has broad power and discretion to determine how the division will occur, for example by sale, conveyance, or exchange. *Randolph v. Randolph,* 8 S.W.3d 160, 168 (Mo.App. W.D.1999); *Goodding v. Goodding,* 677 S.W.2d 332, 339 (Mo.App. W.D. 1984). Clearly, the trial court had subject-matter jurisdiction to divide the 173–acre farm. The parcel was marital property and subject to the trial court's authority under Section 452.330. Therefore, the trial court did not err in asserting its authority to divide the property.

Husband also argues that the trial court erred in failing to follow the procedures required for a partition suit and for an order of partition in kind as delineated in Chapter 528 and Supreme Court Rule 96. But here, as we held above, the trial court was proceeding to order partition in kind under the broad grant of authority of Chapter 452, governing dissolution; it was not proceeding under the relatively narrow parameters of Chapter 528, governing the statutory remedy of partition. Thus, the procedural requisites of Chapter 528 and Supreme Court Rule 96 are inapplicable. In addition, the trial court did not randomly choose a plan by which to divide the 173–acre farm. Before ordering the partition in kind, the trial court heard testimony from both Husband and Wife's valuation experts regarding how the land could best be used. The trial court also considered testimony as to the property's de-

**2.** The Marriage Dissolution Act is found in     Sections 452.300 to 452.415.

scription and character and about the parties' contributions and improvements to the property. Although the trial judge's authority to order partition in kind may be less than that of Solomon's, he displayed no less wisdom in its exercise.

### Point IV: Maintenance Award

■ Husband claims the trial court erred in awarding Wife maintenance at dissolution and pending appeal because the award is not supported by the evidence. Particularly, Husband argues that Wife has sufficient property to provide for her reasonable needs and is able to support herself through appropriate employment. Furthermore, Husband disputes the trial court's determination of his ability to pay the award.

■ The trial court has considerable discretion in granting maintenance orders, and we will only interfere with the order if the amount of maintenance is clearly unwarranted or wholly beyond the resources of the spouse ordered to pay. *Chen v. Li*, 986 S.W.2d 927, 934 (Mo.App. E.D.1999). In assessing the need for maintenance, the trial court examines whether the spouse seeking maintenance lacks sufficient property including marital property apportioned to him or her to provide for his or her reasonable needs and whether the spouse is unable to support himself or herself through appropriate employment. Section 452.335. In addition, the court will balance the reasonable needs of the party seeking maintenance against the other spouse's ability to pay. *Schroeder v. Schroeder*, 924 S.W.2d 22, 26 (Mo.App. E.D.1996).

■ Husband argues that he should not be required to pay Wife $3,000 per month because Wife received enough marital property to provide for her reasonable needs. He argues that Wife should have been required to liquidate her share of the farm and reinvest the proceeds in high-yield investments because she is not a farmer. His argument is at odds with the applicable law. Income-producing marital property is considered in determining the need for and the amount of maintenance. *Clarke v. Clarke*, 950 S.W.2d 11, 13 (Mo. App. E.D.1997). However, to qualify for maintenance, a spouse need not deplete his or her portion of the marital property or risk assets to manufacture a higher return. *Van Natter v. Van Natter*, 988 S.W.2d 110, 113–114 (Mo.App. W.D.1999); *Katz v. Katz*, 989 S.W.2d 268 (Mo.App. E.D.1999). Furthermore, Husband failed to show that there was a ready or reasonable market for Wife's portion of the farm or that Wife would presently realize income from the property. Additionally, Husband states that Wife could depend upon an investment return of 15.4% to 17.5% if she sold the property. This prediction is highly speculative and inflated, and we find it wholly unpersuasive.

Husband further argues that Wife can seek gainful employment to meet her reasonable needs. The trial court considered evidence of Wife's education, employment history, as well as testimony from Husband's expert of Wife's potential earnings. Because the expert testimony was not based on Wife's current skill level, the trial court discounted its weight. The trial court found that Wife was capable of earning $1500 per month. However, her expenses are $4,500 per month. Clearly, Wife cannot meet her reasonable needs through employment.

Finally, Husband claims that the trial court overestimated his ability to pay Wife $3,000 per month because his income declined by $30,000 over two years. The trial court found that Husband earned $10,750 per month from his orthodontics practice and $350 per month from other sources and that there was no credible evidence to explain a reduction in his income. Furthermore, the trial court found Husband's expenses were $3,500 per month. The record shows the trial court considered several factors in balancing Husband's ability to pay with meeting Wife's reasonable needs. We find no error

in the award of maintenance or the amount. Point denied.

## Point V: Reimbursing Wife for Sale of Assets

■ Husband alleges the trial court abused its discretion in ordering him to pay Wife one-half of the sale proceeds he received upon selling certain real estate and securities in 1993 because the assets were not marital and were used to pay family expenses in the years before the parties separated. He also argues the trial court erred in refusing to order Wife to pay Husband for assets she dissipated for her sole benefit after the dissolution action was filed.

In 1993, Husband sold five acres of the 173–acre farm for $52,500 and securities that were marital property for $50,000. He deposited the money into a bank account and an investment account opened in Husband and his mother's names only. Husband maintained the accounts under his mother's social security number and caused the income to be reported on her income tax return. The trial court found Husband's handling of the money "suspicious" and his accounting for all but $28,000 of these marital funds inadequate. Therefore, the trial court ordered Husband to pay Wife $37,250.

Although Wife received temporary maintenance of $750 per month and earned $500 per month from the time of separation until the dissolution, she could not pay her expenses. Wife sold equipment from the parties' farm for $63,500 and used the proceeds to pay those expenses. The trial court found Wife's accounts credible and reasonable, but was troubled that Wife accepted the first offer on the farm equipment. Therefore, the trial court ordered her to pay Husband $18,025 to make up the difference between the sale price and the estimated value of the equipment and $9,600 to compensate Husband for his separate property that she sold, totaling $27,625.

Again, when the judgment in a court-tried case is challenged, we review the outcome under the standards announced in *Murphy v. Carron*, and we defer to the judgment of the trial court regarding credibility of the testimony. *Nichols*, 14 S.W.3d at 634.

The trial court carefully examined Husband's account maintenance scheme and heard testimony from Husband regarding the need to restrict Wife's access to the funds. However, the trial court did not believe Husband's explanation and we will not second-guess the trial court's determination of credibility. Furthermore, Husband's point relied on is misleading in stating that the trial court refused to order Wife to pay for the equipment she sold. In fact, the trial court found that Husband was entitled to partial compensation, but not total reimbursement because the trial court found Wife's testimony as to her need for funds credible. There was sufficient evidence to support the trial court's findings, and thus, we find no error. Point denied.

## Point VI: Attorney Fees

■ Husband asserts the trial court abused its discretion in ordering him to pay $15,000 of Wife's attorney fees for the dissolution and $7,500 of her attorney fees for this appeal because the evidence shows that Wife is better able to pay her own fees due to the marital assets she dissipated during the litigation.

■ The trial court's ruling regarding attorney fees is presumptively correct. *Creech v. Creech*, 992 S.W.2d 226, 230 (Mo. App. E.D.1999). Consequently, we will only reverse if the trial court manifestly abused its discretion. *Id.* The trial court has broad discretion "to award all, some, or none of the amounts billed by counsel." *B.J.D.*, 23 S.W.3d at 800. In deciding the distribution of attorney fees, the trial court may consider several factors including the parties' financial resources and a spouse's conduct during the marriage. Section

452.355.1; *Halupa v. Halupa,* 943 S.W.2d 272, 278 (Mo.App. E.D.1997).

Husband's brief is factually inaccurate and misleading in that it does not mention Husband committed marital misconduct or that the trial court partially based its award of attorney fees on the finding of misconduct. Wife testified that Husband physically and verbally abused her. She documented several times that Husband called her vulgar names and hit or punched her in the face or neck as well as one occasion when he was strangling her. In addition, Husband fired a shotgun in the basement of their home during an argument. The parties' youngest child also testified that Husband had physically and verbally abused the child. In addition, the record shows that Husband has a considerably larger income than Wife currently has or is capable of earning. In light of Husband's marital misconduct and the Wife's financial constraints, the trial court did not abuse its discretion in awarding Wife attorney fees. Point denied.

The judgment is affirmed.

SIMON and SULLIVAN, JJ., concur.