**Debra COLQUITT, Respondent,**

v.

**Aziz MUHAMMAD, Appellant.**

**No. ED 79514.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 1, 2002.

Lawrence G. Gillespie, Gillespie, Hetlage & Coughlin, L.L.C., Clayton, MO, for Appellant.

Mary Ann Weems, Law Office of Mary Ann Weems, St. Louis, MO, for Respondent.

GARY M. GAERTNER, Sr., Judge.

Appellant, Aziz Muhammad ("husband"), appeals from the judgment of dissolution of the Circuit Court of St. Louis County awarding retroactive maintenance in the amount of $3,300, retroactive child support in the amount of $6,400, and maintenance in the amount of $500 per month to respondent, Debra Colquitt ("wife"). We affirm as modified.

Husband and wife were married on August 20, 1988. One child, a son, was born of the marriage on July 6, 1996. Husband and wife separated in July of 1999.

On March 8, 2000, wife filed a motion and affidavit for temporary child custody, child support, maintenance, attorney's fees and costs pendente lite ("PDL motion"). Specifically, wife alleged that the "reasonable and necessary sum" to be paid by husband in child support would be $900 per month and the "reasonable and necessary sum" to be paid by husband for maintenance would be $1,500 per month. Wife prayed for these sums to be paid "as long as [the] suit shall be pending, retroactive to the filing hereof."

On June 5, 2000, a judgment pending dissolution proceeding ("PDL order") was issued, without a hearing, by the trial court. Husband and wife were given joint physical and legal custody of child. Husband, pursuant to the PDL order, was to pay $800 per month in child support. Additionally, pursuant to the PDL order, "[a]ll issues of maintenance, retroactive maintenance [and] retroactive child support [were] reserved for trial."

On September 28, 2000, a trial was held and both husband and wife testified. During various pre-trial conferences the trial court discussed time constraints with both husband and wife. At trial, the trial court imposed an hour-and-a-half time limit for each side to present their case.

Wife testified she was employed by the American Red Cross earning $25,500 annually, and that she planned to return to Webster University to attend classes part-time. Wife expected to receive a bachelor's degree in psychology in January of 2002 and then planned to pursue a master's degree. Tuition at Webster University was $2,200 per semester and the American Red Cross would provide wife with a seventy-five percent tuition remission. At

the time of the trial, wife was temporarily living with her mother, but planned to "get stable" and find her own place. Wife testified she paid between $150 and $300 per month in rent to her mother. Wife listed her monthly child support expenses at $550 including day care. Wife also made vehicle payments of $312 per month on a 1998 Saturn.

Husband testified he was employed at Sankyo Parke Davis. Husband earned in excess of $88,500 annually as a district manager. Husband resided in the marital home at the time of trial. Husband made vehicle payments of $610 per month on a 1998 Mercedes.

During the direct examination of husband, the trial court stated the following to husband's counsel:

Folks, I'm afraid maybe I didn't make myself clear at some point earlier today. We're at 5:35. If [wife's counsel] is going to have the appropriate amount of time to cross-examine, I think you have just about exhausted your time in examination with [husband] talking primarily about topics that are, you know, at least for the last 10 minutes, that are part of the mediated result that will be obtained, hopefully, at Domestic Relations Service.

If you have some further questions to ask [husband] that are most directly pertinent to today's proceeding, I'm going to give you about an other (sic) five minutes to do. I'm sorry to say that to you, but I mean, we're wandering and we didn't have the luxury of wandering on the schedule that we were provided.

Husband's counsel agreed to "try to wrap [direct examination] up." However, husband's counsel objected to the time constraints enforced by the court.

After further direct examination of husband, which encompassed approximately four pages of the transcript, the following exchange occurred:

[Husband's Counsel]: And you are stating to the Court that you would pay $479.90 per month in child support?

[Husband]: Yes.

[Husband's Counsel]: Okay. Now we've, in essence, put a qualifier on that, correct?

[Husband]: Everyday needs—

[Trial Court]: [Husband's counsel], is he attempting to show some evidence other than the parenting plan? I mean, other than—pardon me—the visitation credit?

[Husband's Counsel]: Yes. We've asked that the child—[h]e's willing to pay it, Your Honor, but he wants you to know that if you use [wife's] form he still wants it to be declared unjust and inappropriate for the reasons he's going to be giving now.

[Trial Court]: Okay. Well, in summary, sir, do you expend considerable amounts of money beyond the money stated there for the day-to-day support and care of your son?

[Husband]: Do I spend in addition to the money that I have to give to his mother?

[Trial Court]: Right.

[Husband]: Yes, I do.

[Trial Court]: Okay. I'll take that as his testimony in that regard. Is there something further and specific? I believe—

No objection was raised regarding the trial court's questioning of husband or to the specific questions asked. After further direct examination of husband, which encompassed approximately one page of the transcript, the trial court interjected and reminded husband's counsel of the time limit imposed. Husband's counsel concluded direct examination and wife's counsel began cross-examination of husband.

On January 2, 2001, the trial court issued a judgment of dissolution. Husband and wife were awarded joint physical and legal custody of child. The trial court found that husband's monthly gross income was $7,467 per month and ordered him to pay $856 per month in child support to be paid prospectively. Additionally, husband was ordered to pay $800 per month, retroactive to October 1, 1999, the approximate date of service on husband. The amount of retroactive child support was to be offset by payments that husband made pursuant to the PDL order, "but not by the miscellaneous amounts that [husband] claim[ed] to have expended for support of the child while in his custody because the evidence did not establish the amount of these expenditures or that the parties agreed that they would be considered as child support." The trial court found husband owed wife retroactive child support in the amount of $6,400.

Additionally, the trial court found that wife was fully employed but not able to provide for her reasonable needs. The trial court found that husband was able to contribute $500 per month in modifiable maintenance to wife. Also, the trial court found that wife had "sought and [was] entitled to receive retroactive maintenance from October 1999 which should be offset by the $3000 that [husband] gave [wife] since separation for her educational expenses and the $1200 that [husband] gave to [wife] for the down payment on her car." The trial court found husband owed wife retroactive maintenance in the amount of $3,300. Husband appeals.

We will affirm the trial court's judgment of dissolution unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Woolsey v. Woolsey*, 904 S.W.2d 95, 98 (Mo.App. E.D.

1995). This court views the evidence in the light most favorable to the judgment of dissolution and disregards contrary evidence. *Grubb v. Lehn*, 841 S.W.2d 768, 769 (Mo.App. E.D.1992). Moreover, this court defers to the trial court's determinations regarding credibility of witnesses. *McGowan v. McGowan*, 43 S.W.3d 857, 861 (Mo.App. E.D.2001). The trial court can accept or reject all, part or none of the testimony of any witness. *Id.*

■ In his first point, husband argues that the trial court erred in entering an order for retroactive maintenance because section 452.335 RSMo 2000,[1] does not authorize retroactive orders. In the alternative, husband contends that even if retroactive maintenance was authorized, wife had no need for maintenance during the proceedings and she waived her claim by not pursuing her PDL remedies.

■ Section 452.335 speaks prospectively, not retrospectively; therefore, a maintenance award ordered in the judgment of dissolution cannot be made retroactive. *Woolsey*, 904 S.W.2d at 98. However, section 452.315, which governs awards of temporary maintenance, has been interpreted to allow a retroactive award of temporary maintenance, unless waived, to the date the motion for temporary maintenance was filed. *Browning v. Browning*, 947 S.W.2d 106, 111 (Mo.App. W.D.1997); *Roedel v. Roedel*, 788 S.W.2d 788, 790 (Mo.App. E.D. 1990). This court in *C.M.D. v. J.R.D.*, 710 S.W.2d 474, 478–79 (Mo.App. E.D.1986), found that the trial court erred in awarding a wife retroactive maintenance and child support as part of the dissolution judgment. We found that if the wife was dissatisfied with the amount of the voluntary payments her husband provided during their separation, her remedy was to

1. All statutory references to RSMo 2000, unless otherwise noted.

seek a ruling on her PDL motion, and her failure to do so waived any claim she may have had for increased payments during separation. *Id.* In contrast, the Western District in *In re Marriage of Davis*, 821 S.W.2d 123, 124 (Mo.App. W.D.1991), found that a wife did not forfeit or waive her award of retroactive maintenance because she failed to demand and have an evidentiary hearing on her PDL motion for temporary maintenance. In support of the decision, the Western District stated that "[e]conomy is served by a single trial disposing of all issues, so a party should not be penalized for his or her election to forego an additional hearing on [PDL] motions." *Id.*

In this case, we agree with husband's contention that section 452.335 speaks prospectively and cannot be used by the trial court to award retroactive maintenance. However, wife filed a PDL motion and affidavit on March 8, 2000 in which she asked for $1,500 per month in maintenance for "as long as [the] suit shall be pending, retroactive to the filing hereof." According to the minutes of the proceedings, a PDL hearing was set multiple times after continuances and the parties filed "NOTICE{S} OF HEARING." However, on June 5, 2000, the PDL order was issued without a hearing.[2] Pursuant to the PDL order, the issue of retroactive maintenance was reserved for trial.

Unlike in *C.M.D.*, wife in this case is not dissatisfied with the amount husband voluntarily paid to her during their separation. In fact, the trial court offset the voluntary payments paid by husband from the amount awarded to wife for retroactive maintenance. Also, in *C.M.D.*, the wife's PDL motion was never heard; however, it is unclear from the facts of the case if a hearing on the PDL motion was ever set

or if the parties filed notices to have the PDL motion heard. *C.M.D.*, 710 S.W.2d at 478–79. In this case, wife's PDL motion was also never heard, but the motion was set for hearing and a notice of hearing was filed. The trial court, we assume in the interest of judicial economy, reserved the issue of retroactive maintenance for trial. Wife did not waive her remedy. Rather, she sought and received a ruling on her PDL motion, which was evidenced by the PDL order issued by the trial court reserving the issue of retroactive maintenance for trial. We do not find error, nor do we find that wife waived her right to retroactive maintenance, by the trial court's decision to serve judicial economy by disposing of all the issues in a single trial.

■ However, it is clear that an award of retroactive maintenance may be made retroactive only *to the date the motion for temporary maintenance was filed. See,* *Roedel*, 788 S.W.2d at 791 (emphasis added). In this case, wife filed her PDL motion requesting temporary maintenance on March 8, 2000. However, the trial court's judgment of dissolution, entered on January 2, 2001, entitled wife to receive retroactive maintenance from October 1999. The trial court, instead of awarding $500 per month in retroactive maintenance for fifteen months from October of 1999, should have awarded retroactive maintenance for $500 per month for ten months from March of 2000. Therefore, the retroactive maintenance award should be $5,000. However, the $5,000 retroactive maintenance award is offset by the $3,000 husband paid for wife's educational expenses and the $1,200 husband paid for wife's car. Thus, the total retroactive

---

**2.** It is unclear from the record on appeal why the PDL order was issued without a hearing, in light of a hearing being previously set according to the minutes of the proceedings.

maintenance awarded to wife, as modified, is $800.[3]

Husband's point on appeal is denied; however, we modify the judgment as stated above.

Under section 452.315 a temporary maintenance award is made in conformity with section 452.335. *Francis v. Francis,* 823 S.W.2d 36, 38 (Mo.App. E.D.1991). Therefore, the factors to be considered in awarding maintenance under section 452.315 are the same as those set out in section 452.335. *Id.* Thus, husband's contention that wife had no need for temporary maintenance will be discussed along with husband's final point on appeal, which in the interest of continuity, will now be addressed.

■ In his final point, but for purposes of this opinion his second point, husband argues the trial court erred in ordering him to pay wife $500 per month in modifiable maintenance because such an order was not supported by the evidence. Specifically, husband contends the amount of wife's unreimbursed educational expenses, her monthly income and the child support payments she receives reflect she has no significant need for maintenance.

■ The trial court has broad discretion in determining the amount of a maintenance award and we will not disturb the trial court's award of maintenance unless it appears the trial court has abused its discretion. *Francis,* 823 S.W.2d at 39. The trial court is required to balance wife's reasonable needs against husband's ability to pay. *Id.* We will only interfere with the trial court's order of maintenance if the amount is patently unwarranted and wholly beyond the means of the spouse who pays. *Id.*

Section 452.335.1, providing the authority for maintenance orders, states the following:

In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

In this case, the trial court found that wife was "fully employed but still not able to provide for her reasonable needs, including her need to contribute to the support of minor child, through employment, other resources or from income, if any derived from awarded by the terms of the judgment." Wife was fully employed, but was earning considerably less than husband. Also, wife had educational expenses, albeit greatly reduced due to reimbursement by her employer, which she testified to and included in her statement of income and expenses. Additionally, wife listed her monthly child expenses to be $550. Wife at the time of trial was temporarily living at her mother's home and paying rent. Husband was awarded the marital home, which the court valued at $105,000, and wife was awarded either $8,000 (half of the equity) or half of the

---

**3.** Husband did not argue in his brief that the amount of retroactive maintenance awarded should be modified based on the date wife filed her PDL motion; however, we *sua sponte* modify the award.

proceeds of the sale of the home. In light of the evidence presented, the trial court did not err in determining that wife should be awarded maintenance pursuant to section 452.335.1 or the retroactive award of temporary maintenance pursuant to section 452.315.

■ However, our analysis and husband's argument does not end at this point. Husband argues, and we must consider, whether the amount awarded to wife in modifiable maintenance was just, considering the relevant factors listed in section 452.335.2. Those relevant factors are the following:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

Husband had greater financial resources in that he earned more income than wife. Husband, due to his position as a district manager, had a greater earning capacity than wife, who had yet to complete her college education. Wife, during the separation and trial was living with her mother, paying rent, and earning much less than husband's salary; therefore, it can be inferred her standard of living had decreased since the marriage. Also, wife testified she planned to "get stable" and move out of her mother's home, this statement further evidenced wife's unstable financial condition. Husband lived in the marital home during the separation and was awarded the marital home, which was the most valuable marital property. Husband and wife were married for almost eleven years, which is a somewhat long duration that further established an accustomed standard of living.

Based upon the record, there is sufficient evidence to support the trial court's determination that wife could not meet her reasonable needs through the amount of marital property she was awarded and her employment. The evidence was also sufficient to support the amount of the award for retroactive maintenance. We find no abuse of discretion in the trial court's award of $500 per month in maintenance nor do we find this amount to be excessive.

Husband's point on appeal is denied.

In his second point, but for purposes of this opinion his final point, husband argues the trial court erred in entering an order for retroactive child support.

■ An award of child support is well within the sound discretion of the trial court. *McGowan*, 43 S.W.3d at 861–62. "We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb

an award of child support unless the evidence is 'palpably insufficient' to support it." *Id.* (quoting *Bullard v. Briem,* 969 S.W.2d 880, 883 (Mo.App. E.D.1998)).

■ The trial court is authorized to award retroactive child support by section 452.240.1, which states "[i]n a proceeding for dissolution of marriage . . . the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for the support of the child, including an award retroactive to the date of filing the petition. . . ." A party is not required to exhaust any appeals or other remedies on the PDL order in order to receive an award of retroactive child support. *In re Marriage of Kovach,* 873 S.W.2d 604, 608 (Mo.App. E.D.1993).

In addressing husband's first two arguments under this point on appeal, we find that wife did not waive her claim to retroactive child support and the trial court did not find an agreement regarding expenditure of funds to be a prerequisite in determining retroactive child support.

■ First, as discussed previously, wife did not waive any claims under her PDL motion because she sought and received a ruling on her PDL motion. In fact, the trial court ordered, pursuant to the PDL order, husband to pay $800 per month in child support. Wife did not appeal the PDL nor did she need to in order to be awarded retroactive child support.

■ Second, the trial court did not find that an agreement between the parties was a prerequisite in determining an award of retroactive child support. Rather, the trial court simply found that the evidence did not show that the parties agreed that the miscellaneous amounts husband claimed to have expended on child while in his custody would be considered child support. The trial court did not re-

quire an explicit agreement between the parties, but did require some evidence on the parts of both parties that husband's expenditures were intended to be in lieu of the $800 per month he was to pay in child support pursuant to the PDL order. This was a reasonable exercise of the trial court's discretion.

■ We will now address husband's third argument under this point on appeal that the trial court elicited summary testimony from him regarding his expenditures in order to adhere to time limits and then in the judgment of dissolution found that the evidence did not establish the amount of those expenditures.

■ A trial court has discretion to limit the time for presentation of evidence and review of the limitation is for abuse of discretion. *Brady v. Brady,* 39 S.W.3d 557, 560 (Mo.App. E.D.2001). Time limitations should be imposed only after consultation with the parties. *Id.* A party who complains about the exclusion of evidence should make an offer of proof to inform the trial court of the content of the evidence proffered and to allow this court to determine the prejudicial effect of the exclusion. *Id.* at 560–61.

■ A trial judge has a right to question a witness regarding matters which are material to the issues in the case. *Long v. Long,* 771 S.W.2d 837, 841 (Mo.App. W.D.1989). Furthermore, a party that fails to make timely objections to the judge's questioning may not complain on appeal. *Id.* In civil cases on appeal, when a party fails to make a proper or timely objection, the unpreserved error is rarely reviewed for plain error. *Roy v. Missouri Pacific Railroad Co.,* 43 S.W.3d 351, 363–64 (Mo.App.W.D.2001).

In this case, the trial court imposed a three-hour time limit and gave each party an hour-and-a-half to present evidence.

Husband's counsel did not object to the time limit until page 186 of a 213 page transcript. The trial court states the time limits were discussed "at various and sundry pretrial conferences." Husband's counsel then states "I know." Therefore, we assume husband was aware of the time limits and his counsel was consulted regarding the time limits prior to trial. Also, as husband states in his brief, "the relatively small marital estate," and the lack of any abuse allegations, along with the lack of other time consuming factors, support the time limits imposed by the court. We do not find the time limits to be an abuse of discretion.

■ Husband further contends that the imposition of the time limits led to the trial court eliciting summary testimony from him regarding his expenditures on child and then finding in the judgment of dissolution that no evidence established the amount of these expenditures. However, husband was given the opportunity to testify regarding the specific amounts of the expenditures. After the trial court warned husband's counsel about the time limits, husband's counsel continued to question him for approximately another four pages of transcript. The trial court, within its right, interjected and began to question husband regarding whether he expends "beyond the money stated ... for the day-to-day support and care of [child]." Husband answered "yes." The trial court took husband's "testimony in that regard." However, the trial court then asked "[i]s there something *further and specific* ?" (emphasis added). Husband's counsel went on to question husband for approximately another one page of transcript. Husband never testified to a specific amount he expended on child during this further questioning. The record reflects that neither the trial court's enforcement of time limits nor the trial court's questioning of husband impeded on husband's opportuni-

ty to establish the specific amounts he expended on child.

Moreover, husband's counsel did not object to either the questioning of husband by the trial court or to the type of questions asked. Furthermore, husband failed to make an offer of proof regarding the specific amount of expenditures he had made to support child. We find that husband has failed to preserve this argument for appeal; regardless, it appears from the record he was given the opportunity, which he did not take advantage of, to testify regarding his specific expenditures. Therefore, the trial court did not err in finding the evidence did not establish the amounts of husband's claimed expenditures on child. Thus, the award of $6,400 for retroactive child support, without a deduction for further expenditures by husband, is proper and supported by the evidence.

Husband's point on appeal is denied.

Accordingly, we affirm the judgment of the trial court as modified.

PAUL J. SIMON, P.J., and KATHIANNE KNAUP CRANE, J., concur.