**L.J.B., Petitioner–Appellant,**

**v.**

**L.W.B., Respondent/Respondent.**

No. 65395.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 13, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 25, 1996.

Application to Transfer Denied
May 28, 1996.

John Pleban & George A. Kiser, Green-burg, Pleban & Fleming, St. Louis, for Appellant.

Lawrence G. Gillespie, Eisen, Gillespie, & Hilton, Webster Groves, Stuart Howard Goldenberg, St. Louis, for Respondent.

CRANDALL, Judge.

Husband, L.J.B., appeals from the decree of dissolution of his marriage to wife, L.W.B.[1] We affirm.

■ Review of this case is governed by the principles of the oft-cited *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). At the trial of this case, there was sharply conflicting evidence which the trial court was called upon to resolve. The credibility of the parties was a key issue. On appeal, we do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence. *Riaz v. Riaz,* 789 S.W.2d 224, 225 (Mo.App.1990). We recognize the superior position of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in a trial transcript. *Id.* Within the guidelines of these fundamental precepts, we now review the record in this case.

Over the objection of husband's counsel, the trial court limited the trial to three days or 17 hours of testimony in September 1992. The court strictly enforced the time limitations and restricted the cross-examination and recross-examination of witnesses.

The evidence adduced established that husband and wife were married in November 1983. Two daughters were born of the marriage: C.E.B. in October 1985 and R.D.B. in May 1987. The parties separated in April 1990.

Husband had bachelor's and master's degrees and was employed as a research scientist, earning about $3,600.00 per month. He had additional income of about $7,000.00 annually from a part-time teaching position at a local university. His monthly expenses, including the child support paid pursuant to the pendente lite order, amounted to

1. This court originally handed down an opinion in this appeal, holding that husband's notice of appeal did not vest jurisdiction in this court. Upon transfer, the Supreme Court of Missouri reversed the decision of this court and remanded the case for decision. *L.J.B. v. L.W.B.,* 908 S.W.2d 349 (Mo.banc 1995).

$2,515.00. Wife had a bachelor's degree and worked as a public health nurse. Her monthly earnings were approximately $2,050.00. The monthly expenses for herself and the children totalled $3,051.00.

From the spring of 1988 until the fall of 1990, wife was employed at a family care center in the City of St. Louis, working with abused women. Wife became friendly with one of her patients, D.B. She engaged in extended telephone conversations with D.B. after work hours. Frequently, D.B. stayed overnight with wife at the marital home in O'Fallon, Missouri, and wife spent the night at D.B.'s house in the City of St. Louis.

In April 1990, wife moved out of the marital home and moved into D.B.'s residence. At that time, D.B. had custody of three of her six children. As a result of D.B.'s pleading guilty to three counts of endangering the welfare of a child, three other of her children had been placed in foster care.

In November 1991, wife and the children moved out of D.B.'s residence to a town in Illinois. Wife, however, maintained contact with D.B. after the move; and D.B. moved to a town in Illinois which was approximately a twenty minute drive from wife's residence. Although wife denied the allegations, husband contended that wife and D.B. were engaged in a sexual relationship. Husband sought custody of the children.

Wife alleged that husband had sexually abused the children and also sought custody. The children underwent physical and psychological examinations. The physical examinations revealed no evidence of sexual abuse. Taped interviews with the children were admitted into evidence and the trial court interviewed the children in camera. Numerous medical and mental health professionals testified at trial with regard to the abuse allegations as well as about the fitness of wife and husband as parents. There was disagreement among the experts about whether abuse had occurred and about whether father was the perpetrator of abuse. Husband denied sexually abusing the children and claimed that wife coached the children with regard to the abuse allegations.

The trial court issued its decree of dissolution in December 1993. The court divided the marital property as follows: husband was awarded *inter alia* the marital residence, furniture, a credit union account, and five shares of common stock; wife was awarded *inter alia* furniture, a bank account, her pension plan, and a portion of husband's pension plan. The court entered an order for child support. The court also ordered husband to pay wife's attorney's fees in the amount of $7,500.00 and to pay the guardian ad litem $1,350.00. Wife was ordered to pay the guardian ad litem $750.00.

In the December 1993 decree, the court found that wife had not coached the children regarding the sexual abuse allegations and determined that husband had sexually abused the children. The court found that it was in the best interests of the children that neither husband nor wife be awarded legal custody and awarded reasonable temporary physical custody to wife and supervised visitation to husband. The court expressed concern about wife's judgment and about "whether she has placed her needs before the needs of the minor children," citing her relationship with D.B. as an example. In the court's opinion, the children should have no contact with D.B. The court also found that wife and D.B. were engaged in a sexual relationship; and that the relationship negatively impacted the children, primarily because it exposed the children to D.B. whom the court characterized as "an inappropriate role model" for the children.

The court further ordered "any individual or entity, other than [husband] and [wife], who wished to request legal custody and/or primary physical custody of the minor children" to file a motion to intervene and petition for custody of the children within 14 days of the order. On December 21, 1993, husband's mother and father filed a motion to intervene.

On that same day, wife filed a motion for new trial or, in the alternative, a motion to amend the judgment. Wife requested that the court revisit the issue of custody, because of changed circumstances since the September 1992 trial. The guardian ad litem also filed a motion for new trial for the purpose of

taking additional testimony on the issues of child custody and her fees. Husband consented to the motions to the extent that they sought a new trial on the issue of custody. The court granted an evidentiary hearing limited to evidence of wife's actions since the original trial with regard to her fitness to have custody of the children. The court reserved judgment on the motion to intervene.

The intervenors then filed an application for change of judge. Husband filed a motion for continuance and a motion for psychological examination of him, wife, and the children. The court denied these motions.

An evidentiary hearing was held on February 14, 1994. After the hearing, the court issued its amended findings and order of dissolution. Finding that D.B. was no longer an influence on wife, the court awarded primary physical and legal custody of both children to wife and ordered supervised visitation with husband for one to two hours per week. The court ordered husband to pay an additional $4,000.00 and wife to pay an additional $2,400.00 in guardian ad litem fees; and entered an order for child support.

In his first point, husband contends the court erred in awarding custody of the children to wife and in granting him only supervised visitation.

■ There is no absolute rule to follow when determining what the outcome of a custody case should be; each case must be examined in light of its unique set of facts. *Replogle v. Replogle,* 903 S.W.2d 551, 554 (Mo.App.W.D.1995). The trial court has broad discretion in making provision for child custody and we will not interfere with the trial court's decree unless the welfare of the children compels such interference. *Id.* A determination of child custody is given greater deference than that given the trial court in any other type of case. *Id.*

■ The question of child custody is guided by § 452.375.2, RSMo (1994), which requires the court to determine custody "in accordance with the best interests of the child." Here, in its amended findings and decree of dissolution, the court found that it was in the best interests of the children to award legal custody to wife. The court stated:

Wife has demonstrated, during the marriage, during the separation and since the initial evidentiary hearing, an ability to care for the physical needs of the minor children and, if [D.B.] is no longer an influence on her, ... a present ability to care for the emotional needs of the minor children, who ... are so emotionally fragile that they are unable to withstand the physical separation from Wife....

As to husband, the trial court found that based upon videotaped interviews with the children, upon expert testimony, and upon its own interviews with the children, husband had sexually abused the children. Although husband challenged the testimony about the abuse as hearsay, such evidence met the criteria articulated in *In Interest of S.M.,* 750 S.W.2d 650, 654 (Mo.App.1988). There was substantial evidence in the record to support the court's conclusion that husband sexually abused the children.

Further, at the hearing on wife's motion to amend, husband's counsel stated that neither husband nor wife was a suitable custodian for the children. This was a judicial admission as to husband, while being argument as to wife. In the instant action, there is little doubt that neither parent exemplified the characteristics of an ideal parent. Given the choice, however, between this mother and a father who sexually abused his children, there was no abuse of discretion in the court's deciding to award wife custody of the children. *See, e.g., D.L.M. v. L.E.M.,* 788 S.W.2d 753, 755 (Mo.App.1988).

■ The remaining issue is whether the trial court erred in granting supervised visitation to husband. Section 452.400.1, RSMo (1994) requires the court to grant reasonable visitation rights to the noncustodial parent "unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development." Given the gravity of the court's finding of sexual abuse by husband, we find that supervision of his visitation with the children was the least onerous restriction the court could

have imposed under the circumstances. Husband's first point is denied.

■ In his second point, husband contends the trial court erred in limiting the amount of time for trial. He argues the court restricted his ability to present evidence; and thus denied him his rights to due process, to a fair trial, and to equal protection. He complains that he was limited in his cross-examination of wife's witnesses and in his presentation of additional evidence at the February 1994 hearing. Specifically, he points to instances where the court counted his cross-examination time against his total time and refused him opportunities to conduct redirect examinations.

■ Notwithstanding the unorthodox method the trial court employed to enforce its time constraints, there was no abuse of discretion in limiting the time for trial. Here, the parties were apprised well in advance of the September 1992 trial of the court's intention to limit the time for the presentation of evidence. The amount of time allotted was deemed by the court to be reasonable and necessary to forestall cumulative evidence. The time allotted conformed to the amount of time requested by counsel. Counsel at all times remained in control of the case and were the best arbiters of what evidence to present and what to prune. Indeed, the time prescribed was sufficient to generate transcripts of over 1400 pages of testimony at the September 1992 trial and over 360 pages of testimony at the February 1994 hearing. As to the court's limitation on cross-examination, a trial court is granted discretion over the scope of cross-examination in a civil proceeding and the court's ruling will not be disturbed on appeal absent an abuse of that discretion. *Philmon v. Baum*, 865 S.W.2d 771, 777 (Mo.App.W.D. 1993). There was no abuse of the trial court's discretion in limiting either cross-examination or the amount of time to present evidence.

■ Even if the trial court did abuse its discretion, husband failed to establish precisely how he was prejudiced by the court's restricting the time to present evidence. He did not establish that evidence he would have

presented either was different from that already adduced at the September 1992 trial or was dispositive on any issue adjudicated therein. In the absence of prejudice, there is no reversible error. Husband's second point is denied.

■ In his third point, husband asserts the trial court erred in entering its order pertaining to property, child support, and attorney's fees because the parties' financial information was stale when the decree was entered. The decree was entered in December 1993, approximately 15 months after the September 1992 trial.

Husband did not provide any indication of how he was prejudiced by the court's failure to value the property or to revisit the financial situation of the parties at the time it issued the order of dissolution in December 1993. He did not specify any property which had changed drastically in value from the time of the hearing in September 1992 until the decree in December 1993. *Compare In re Marriage of Gustin*, 861 S.W.2d 639 (Mo. App.W.D.1993) (court must value stock as of the date of distribution in October 1991, where stock valued in February 1991 increased 30 percent by October 1991 and where stock constituted 80 percent of the multi-million dollar marital estate). He did not claim that either his or wife's financial situation had changed substantially during that same period of time. Absent a showing that husband was aggrieved by the court's refusal to reevaluate the parties' financial status, husband cannot claim error on appeal. *See, e.g., In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990). Husband's third point is denied.

■ In his fourth point, husband charges error in the trial judge's refusal to disqualify himself and grant a change of judge when the intervenors requested such a change under Rule 51.05. We decline to address this point on appeal. Husband does not have standing to raise this claim of error, because his parents filed the Rule 51.05 motion. Only the party aggrieved by the actions of the trial court may raise a claim of error relative to the court's actions. *Lafferty*, 788

S.W.2d at 361. Husband's fourth point is denied.

In his final point, husband claims the trial court erred in denying his motion for psychological evaluations of the parties and of the children prior to the February 1994 hearing. The trial court is vested with broad discretion regarding matters of discovery; and appellate courts will not interfere unless the trial court's ruling is so arbitrary as to shock the sense of justice. *Dana Commercial Credit Corp. v. Cukjati,* 880 S.W.2d 612, 616 (Mo.App.S.D.1994). Husband enjoys no absolute right to present the testimony of any expert he desires. *See State ex rel. Lichtor,* 845 S.W.2d 55, 59–60 (Mo.App.W.D. 1992). Here, there were numerous experts who testified regarding the parties and the children, their respective emotional states, the fitness of the parties as parents, and husband's sexual abuse of the children. The trial court did not abuse its discretion in refusing to permit additional evaluations and testimony at the February 1994 hearing about issues adequately addressed at the hearing in September 1992. Husband's fifth point is denied.

The judgment of the trial court is affirmed.

CRANE, P.J. and DOWD, J., concur.