**William Allen YOUNG, Respondent,**

**v.**

**Chasity L. PITTS, Appellant.**

**Nos. WD 71794, WD 72124.**

Missouri Court of Appeals,
Western District.

Feb. 15, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 2011.

Application for Transfer Denied April 26, 2011.

Michael C. McIntosh, Independence, for appellant.

Michele C. Puckett–Burkhead, Cameron, for respondent.

Before Division II: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Chasity Pitts ("Mother") appeals the judgment of the Circuit Court of Caldwell County ("motion court") modifying a prior judgment and parenting plan setting forth terms of custody of Mother's daughter, R.Y. ("Daughter"). Mother claims that the motion court erred in denying her motion for disclosure of Department of Social Services ("DSS") investigative records[1] pertaining to alleged abuse of Daughter by Mother's husband, Steve Pitts. Mother offers two reasons for her claim of error: (1) that the statute dealing with confidentiality and release of DSS records, section 210.150,[2] is unconstitutional as it violates due process; and (2) that the motion court's finding that the DSS's refusal to release the records to Mother was based upon concern for a person's life or safety was not supported by any evidence in the record. Mother also claims that the motion court abused its discretion in establishing a seven-and-one-half-hour time limitation on the presentation of her case at the motion hearing. We affirm the judgment of the motion court and deny the

---

1. Mother's briefing refers to the "record and report." We assume she meant the report of alleged abuse pursuant to section 210.110(15) and documents developed during DSS's investigation of the report. We refer to the documents sought by Mother as DSS "investigative records" in this opinion.

2. All statutory references are to RSMo 2000, as updated through the 2008 cumulative supplement, which is the version of the statutes in effect at the time of the hearing on the motion to modify custody, and thus relied upon by the motion court.

pending motion to transfer this appeal to the Missouri Supreme Court. We also dismiss Father's appeal of the award of attorney's fees.[3]

### Factual and Procedural Background[4]

On November 15, 2007, the circuit court entered a judgment of paternity, custody, visitation, and support. In the judgment, joint legal and joint physical custody of Daughter was granted to Mother and William Allen Young ("Father"), with Mother's residence designated as residence for mailing and educational purposes. Father was ordered to pay child support in the amount of $450 per month. Per the original parenting plan, Father had Daughter every other week from Thursday evening until the following Tuesday evening, plus certain holidays and some summer vacation time, with Mother having Daughter the remainder of the time. After Daughter was to start Kindergarten, Father was to have Daughter on the first, second, and fourth weekends of each month, plus the holidays, with Mother to have Daughter at all other times.

In January 2008, someone made a hotline call to the DSS alleging that Mother and/or Pitts had abused Daughter sexually. After investigation, the allegations were found to have been unsubstantiated. In May of 2008, allegations of sexual abuse were made again. This time the allegations were found to have been substantiated as to Pitts.[5] On July 24, 2008, after the second set of allegations of sexual abuse was made against Pitts,[6] the visitation schedule was temporarily modified. The court granted Mother supervised visitation on Mondays from 7 a.m. to 3 p.m., on Fridays from 3 p.m. to 9 p.m., and every other Sunday from 7 a.m. to 3 p.m., with Pitts not to be present.

On June 4, 2008, Mother filed a motion to modify custody, alleging, among other

---

3. This court informed Father by letter dated April 23, 2010, that the docket entry of January 29, 2010, awarding fees was not a final appealable order. Because no final appealable order awarding fees was submitted to this court, we dismiss Father's appeal of the award of attorney's fees.

4. We view the facts in the light most favorable to the judgment. *Coffman v. Coffman*, 300 S.W.3d 267, 270 (Mo.App. W.D.2009).

5. After a report of abuse has been found to have been substantiated, an accused may seek an administrative appeal before the Child Abuse and Neglect Review Board pursuant to section 210.152 and 13 CSR 35–31.025, which Pitts did in this case. For a thorough description of the administrative appeals process, see *Pitts v. Williams*, 315 S.W.3d 755 (Mo.App. W.D.2010). No criminal charges were ever filed against Pitts. The dissent makes much of the "fact" that the substantiated finding of abuse against Pitts was later amended to unsubstantiated. However, this "fact" was not part of the record below and is not part of the record on appeal. While it appears that the DSS sent Pitts a letter on August 12, 2010, notifying him that the administrative finding of abuse against Pitts had been "updated to unsubstantiated," and Mother submitted a copy of the letter as an appendix to her reply brief, Mother never sought to supplement the record on appeal. However, at oral argument, when asked whether the finding had been updated to unsubstantiated, Father's counsel conceded that it had been "at this juncture." Therefore, we believe Father concedes that there was a subsequent change to the DSS's findings.

6. After the second set of allegations of abuse in May of 2008, until the court order temporarily changing the visitation schedule issued in July of 2008, the original judgment and parenting plan was still effective, but the Division of Family Services ("DFS") apparently ordered both Mother and Pitts to have no contact with Daughter for thirty days while the investigation was underway. Mother unsuccessfully tried to retrieve Daughter from her daycare after the expiration of the thirty days. It is unclear whether the DFS or the motion court first implemented Mother's supervised visitation.

things, that Father made repeated unsubstantiated calls claiming abuse of Daughter by Mother and Pitts. Mother requested that the motion court grant her sole legal custody with Father having supervised visitation. Father filed a counter-motion asking for sole legal custody and alleging that Pitts had sexually abused Daughter and that Mother had failed to protect Daughter from Pitts's abuse.

During pre-trial discovery, Mother served the DSS with a subpoena seeking access to the records concerning the two investigations. The DSS moved to quash the subpoena and later moved the court to dismiss Mother's resulting motions to compel discovery and for contempt against the DSS. The DSS asserted that it would not release the records pertaining to the abuse allegations against Mother and Pitts because some of the records were "law enforcement records which remain confidential during a criminal investigation." The DSS continued that it "would not be providing records of [its] Children's Division pursuant to [section] 210.150 without information from the prosecutor that charges have been filed or the investigation is concluded with no charges filed."

After a hearing on September 30, 2008, the motion court denied Mother's motions to compel discovery and for contempt against the DSS. The docket sheet states that the "[c]ourt does not require Children's Division to release information requested by [Mother] as the Children's Division believes release of such information may place life of juvenile in danger; therefore release of information will not be made pursuant to Section 210.150.4."

At the final hearing on the respective motions to modify custody, the court reiterated that "since no criminal charges have been filed … the reports are confidential and should not be turned over to either of the parties."

On November 10, 2008, a hearing on temporary custody was held. The final hearing on the motions to modify custody was held on February 23, February 26, and April 30, 2009.[7] At the final hearing, testimony began with Mother, who testified that Father's house was "nasty" and "very cluttered" with seven people living in a very small house. She also testified that Daughter was not kept clean when she was in the custody of Father and his wife ("Stepmother"). Mother's testimony then addressed the two allegations of sexual abuse made against her and Pitts. She testified that the first allegations against her and Pitts were found to be unsubstantiated and that the later allegations were found to be unsubstantiated as to her. After the second allegation, Pitts was ordered to have no contact with Daughter. Mother testified that she did not believe that "the substantiated [finding] was properly substantiated" and that she believed the allegations were made to deny her parenting time with Daughter. However, Mother acknowledged that Daughter had told a number of people, in Mother's presence, that Pitts had touched her inappropriately.

Mother testified that, after the first allegations, Pitts was no longer left alone with Daughter, except for two times when Pitts picked Daughter up from daycare and brought her to Mother's workplace. Mother testified that, after the second alle-

---

7. Mother has provided us with the transcript from only two days of the three-day hearing on the motion to modify. In addition, Mother has not provided us with the transcript from the testimony that was taken at the hearing for temporary custody, held on November 10, 2008, even though, in addressing the motion to modify, the motion court relied on evidence adduced at the temporary custody hearing.

gations, Daughter had not had any contact whatsoever with Pitts. Later, however, Mother testified that Pitts would sometimes enter their forty-acre property where Mother's home was located during Mother's visitation time with Daughter when Pitts knew that Mother and Daughter would not be there. Mother admitted that one time, when she and Daughter were returning home from an outing, Pitts was just leaving the property and the two cars met each other in the driveway. Mother also testified that shortly before the final hearing, she had made a hotline call to report that Daughter had been touched inappropriately by her five-year-old stepbrother while Daughter had been visiting Father's home.

The Daughter's guardian *ad litem* ("the GAL") stated in closing that she was concerned that Pitts did not understand what "no contact" meant.[8] There was evidence that Daughter reported seeing Pitts after the no contact order was in place. In response to these reports, the GAL went to Mother's house for a home visit one evening during Mother's visitation time with Daughter. Mother testified that on that visit, the GAL ran into Pitts sitting in his car on the property, two-tenths of a mile from the house. Subsequent to this visit, the motion court ordered Pitts not to be present on the forty acres on which Mother's house was located during visitation.

Pitts also testified at the hearing. He stated that when Daughter was getting ready for bed at night, he would lie down by her and scratch her back and her belly until she was comfortable, which would take about five or ten minutes. Pitts did not see anything wrong with this nighttime routine, and it continued after the first allegation of abuse although, unlike before, Mother was present in the room when this occurred. Pitts stated that he never touched Daughter inappropriately, although he did, until the first allegations were made, bathe her and wipe her after she used the toilet. Pitts admitted that after the allegations of sexual abuse were made, Mother never asked Pitts whether he had touched Daughter inappropriately because "[s]he didn't have to. She knew better."

Father testified that Daughter had reported to him "several times" that she had seen Pitts, even after the court had ordered Pitts to have no contact with Daughter. Father testified that Daughter had reported to him on more than one occasion that Pitts had touched her inappropriately. Similarly, Stepmother testified that Daughter had told her on a number of occasions that Pitts had touched her inappropriately.

Noting that the Daughter stated repeatedly that Pitts had touched her inappropriately and that "we will not ever know" whether Daughter was abused, the GAL recommended that the court give legal and physical custody to Father. The GAL stated in closing argument that Mother "completely denied that there was even a possibility that anything occurred" and that

8. Because the hearing transcript is incomplete, we are unable to determine whether the GAL testified at the final hearing, or just gave a closing argument referring to other evidence presented. The motion court's findings, however, note that, according to the GAL, Daughter believes that she had been abused by Pitts, and the findings included other allegations that appear to be based on the GAL's personal observations. Because there was no objection during the GAL's closing argument and no challenge on appeal to the motion court's reliance on the GAL's statement, we will assume evidence was presented to support the GAL's assertions in closing.

it's very unfortunate that a parent hears from a child that something has happened to her and does not even ask— does not even take the time to ask her spouse.... [F]rankly, not to even take the time to ask and not to follow up on the things that should be done in order to make sure that the child is protected, I feel like that is the issue, for me, in this case ... and most of the reason why I have made the recommendation.

The motion court issued a judgment that referenced testimony from the final hearing and also summarized the testimony from therapeutic counselor Dr. Selina Sanchez, forensic interviewer Heather Swymeler, and evaluating psychologists Dr. Nancy Ansevics and Dr. Aileen Utley.[9] The judgment noted that Dr. Sanchez reported that Daughter had disclosed, during play therapy when she was four years old, that she had been sexually abused. Daughter said that she felt scared and added, "That's how I feel when [Pitts] touches my potty." The judgment noted that Dr. Sanchez testified that there was nothing out of the ordinary regarding Daughter's admissions that caused Dr. Sanchez to question Daughter's truthfulness. Dr. Sanchez testified that Daughter told her that Pitts made her feel "yucky," sad, and scared, and that Daughter's play therapy was consistent with her allegations.

The judgment next summarized the testimony of forensic examiner Swymeler, relaying that Daughter had stated that Pitts had touched Daughter's "potty and butt" with his "potty and butt" on more than one occasion.

The judgment noted Dr. Ansevics's testimony that Daughter was not shocked by male nudity in tests that Ansevics had administered to Daughter, which was a matter of grave concern to Ansevics. Ansevics had also testified that usually the first report by a child was the most accurate and that there were several "red flags" regarding Pitts's treatment of Daughter.[10]

The motion court's judgment continued the arrangement of both parents having joint legal and joint physical custody of Daughter but essentially made permanent the temporary modification of visitation. Mother was given parenting time every other Monday and every other weekend until Daughter started Kindergarten, with Mother to have parenting time on the first, second, and fourth weekends of the month thereafter. Both Mother and Father were granted parenting time on holidays and during the summer months. Noting the allegations of sexual abuse against Pitts and finding that Mother had failed to take appropriate steps to protect Daughter from the alleged abuse, the judgment ordered that Pitts was not to be present on

9. It is not entirely clear when the testimony of all of these professionals was taken. In its findings of fact, the motion court notes that the testimony of Sanchez and Swymeler was given during the November 10, 2008 hearing. As noted previously, we did not receive the transcript of this hearing. It is unclear whether any of these witnesses testified again at the modification hearing. Testimony for which no transcript was provided is cited only as it is included in the judgment by the motion court. Mother's points on appeal allege no error in the judgment's reliance on this testimony.

10. The dissent assumes that we cite this evidence to indicate that the motion court could have found that Pitts abused Daughter. That is not our point. It appears that most, if not all of the evidence from medical professionals and social workers regarding Daughter's allegations of abuse and conduct consistent therewith was presented at the November 10, 2008 hearing. Yet after hearing this testimony, the uncontroverted evidence presented at the hearing in the spring of 2009 was that Mother still had never questioned Pitts about the allegations.

the forty acres on which Mother lived at any time during Mother's parenting time. To the extent that Mother and Father disagreed as to medical, religious, and educational decisions, Father was to make the final decision after consulting with Mother. Father's address was made Daughter's residence for mailing and educational purposes. The judgment also required Mother to pay child support to Father in the amount of $344 per month and to repay Father for the child support she received when Father had temporary custody of Daughter. This appeal follows.

### Standard of Review

We affirm the judgment of the motion court unless it is not supported by substantial evidence; it is against the weight of the evidence; or it misstates or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When a judgment addresses a motion to modify child custody, we assume that the motion court was motivated by the best interests of the child. *O'Connell v. Horton*, 313 S.W.3d 702, 705 (Mo.App. W.D.2010). The motion court's determination in a child custody matter is given more deference than in any other type of case. *Id.* Although the motion court here continued joint legal custody and joint physical custody, it altered the visitation time, and thus the same standard applies. *Bather v. Bather*, 170 S.W.3d 487, 492 (Mo.App. W.D.2005) (applying the above standard when a controlling custodial arrangement provided for joint physical custody and at least one parent was attempting to modify the time the child spent with the other parent).

### Constitutionality of Section 210.150.2(4)

Mother's first point on appeal is that section 210.150.2(4), which deals with the confidentiality of Children's Division reports and records, is unconstitutional because it denies parents due process in that it gives the DSS a unilateral ability to determine whether investigative records are subject to disclosure, thereby depriving parents, who would otherwise have a right to such information, of notice and an opportunity to be heard. When an appellant makes a constitutional challenge, we first determine whether the constitutional issue was preserved for appeal and, if so, then determine whether jurisdiction lies with this court to decide the constitutional issue or whether the appeal must be transferred to the Missouri Supreme Court. *State v. Newlon*, 216 S.W.3d 180, 184–85 (Mo.App. E.D.2007). Father maintains that Mother failed to preserve her constitutional challenge to section 210.150 by raising it for the first time on appeal.

A constitutional issue must be raised "at the earliest possible moment consistent with good pleading and orderly procedure." *State v. Turner*, 48 S.W.3d 693, 696 (Mo.App. W.D.2001). In addition, the constitutional provision claimed to have been violated by the challenged statute must be specifically referenced or quoted. *Newlon*, 216 S.W.3d at 184. The facts comprising the constitutional violation must be stated, and the constitutional challenge must be preserved throughout the lower court proceeding. *Id.*

Mother made numerous attempts before the motion court to obtain access to DSS records but points to nothing indicating any challenge to section 210.150's constitutionality in any of the motions filed or hearings held in furtherance of her efforts. Mother's motion to compel records from the division of child services and for contempt of court, filed September 26, 2008, requests that she be granted access to the investigative records pursuant to section 210.150 but does not challenge the statute's constitutionality. Her request to re-

view DSS records held by the motion court *in camera,* filed February 13, 2009, similarly makes no reference to section 210.150's constitutionality. Mother's motion to revise the judgment, filed July 7, 2009, makes vague references to Mother having been denied "Due Process" but does not specifically reference the constitutionality of the statute, nor does the motion cite which constitutional provisions she feels that the statute violates. Mother does not provide transcripts to the hearing or hearings that the motion court held in its consideration of Mother's attempts to gain access to the DSS records, so we cannot presume that Mother challenged section 210.150's constitutionality in the course of those hearings. Because it appears that, as Father suggests, Mother first challenges the constitutionality of section 210.150 on appeal, the issue has not been preserved for appellate review. Accordingly, we are required neither to address Mother's challenge to the statute nor transfer the matter to the Missouri Supreme Court. *See Turner,* 48 S.W.3d at 697. Mother's motion for transfer is thus denied, as is her first point on appeal.

### Motion Court's Rationale for Refusing to Release DSS Records[11]

For her second point on appeal, Mother claims that the motion court erred in denying her request for access to the DSS investigative records because Mother is statutorily entitled to such access by virtue of section 210.150.2(4).

#### a. Statutory right to records

■ Section 210.150.2 provides:

2. Only the following persons shall have access to investigation records contained in the central registry:

. . . .

(4) Any child named in the report as a victim ... or the parent, if not the alleged perpetrator ... but the names of reporters shall not be furnished to persons in this category. Prior to the release of any identifying information, the division shall determine if the release of such identifying information may place a person's life or safety in danger. If the division makes the determination that a person's life or safety may be in danger, the identifying information shall not be released....

Because Mother had been cleared of any wrongdoing by the time she requested the DSS investigative records, she claims that she was entitled to access the records as a parent of Daughter under this subsection and, therefore, served the DSS with two subpoenas requesting the records.[12] The DSS refused to produce the investigative records, stating that "some of the Department's records are law enforcement records which remain confidential during a

---

11. This court could easily deny Mother's second point on appeal based solely upon the inadequacies in her point relied on. Mother alleges error in her point only in that the justification given for non-disclosure of the DSS investigative records was based upon a finding that the life or safety of a person was in danger and that the finding had been made for the first time in the motion court's written judgment. Mother conceded at oral argument that the finding had, in fact, been made at an earlier date. Mother's point in no way alleges that she was prejudiced by the motion court's refusal to allow her access to the investigative records. While this alone is rea-

son to deny Mother's second point, we have chosen to address the arguments she makes in her briefing on this point.

12. In fact, even if Mother had not been cleared of any wrongdoing, section 210.150.2(5) allows similar access to "[a]ny alleged perpetrator named in the report." Although if a criminal complaint has been filed against the perpetrator, the investigative records will not be released until an indictment is returned or an information is filed. *Id.; see Pitts,* 315 S.W.3d at 764–65.

criminal investigation." Because at the time of Mother's request a criminal investigation of Pitts was still reportedly underway, the DSS refused to produce the law-enforcement records and stated that it would only produce the non-law-enforcement records upon order of the motion court. When Mother asked the court to compel the DSS to release the investigative records, the court denied the request. The docket-entry order states, "Court does not require Children's Division to release information requested by [Mother] as the Children's Division believes release of such information may place life of juvenile in danger; therefore release of information will not be made pursuant to Section 210.150.2(4)."

Mother claims that there is absolutely no evidence in the record that would support a finding that any person's life or safety would have been endangered by allowing Mother to have access to the investigative records. After reviewing all of the information that was provided to this court, we agree with Mother. Nowhere in the record before this court is there any indication that Pitts had a propensity for violence or that he or Mother had made any threats to anyone's life or safety, even though it seems that everyone involved knew who had made the allegations of abuse and that the alleged victim was Daughter. And even if there had been a valid concern for a person's life or safety, our reading of the statute is that a redacted version of the investigative records in DSS possession would still be accessible to Mother, with only the names of the report-ers and any "identifying information" being redacted.

**b. Prejudice as result of failure to provide access to the DSS report**

■ However, even if Mother had the right to access the DSS investigative records in this proceeding, refusal to compel the DSS to release its records alone would not warrant reversal of the court's judgment modifying child custody. In order to prevail, Mother must also demonstrate that she was *prejudiced* as a result of the failure to provide her with access to the DSS investigative records. *See Halford v. Halford*, 292 S.W.3d 536, 543 n. 4 (Mo.App. S.D.2009) ("We should not reverse the trial court unless both error and prejudice are demonstrated."). As noted above, Mother does not allege prejudice in her point relied on. We have elected to review this argument even though the point relied on is deficient. However, the argument itself alleges prejudice in only the most cursory way. Mother states simply that by denying her access to the DSS investigative records, the motion court "limited her counsel's ability to cross-examine any DSS workers as to the contents . . . or anything that is in the [DSS] record." [13] Also, Mother attempts to incorporate by reference into her appellate brief arguments that she made in pleadings before the motion court by stating that certain pleadings contained in the appendix and legal file "identify the prejudice she sustained with great particularity." Arguments made in pleadings before the lower court may not be incorporated by reference in an appellate brief. Therefore, the only allegation

---

13. We reject the dissent's assertion that inherent in Mother's argument is the claim that the motion court relied on "why" the DSS found the second allegation of abuse to be substantiated and therefore Mother's briefing inherently argues that the motion court improperly delegated its fact-finding function to a third party—the DSS. At most, Mother's briefing puts forward the argument that the motion court should not have relied on the "fact" that the allegation was substantiated without giving Mother the records because the records might have allowed her to more effectively challenge whether the allegations should have been substantiated.

of prejudice before this court is that the motion court's failure to provide Mother with the DSS investigative records limited her ability to cross-examine any DSS workers about the contents of the records. Mother does not explain how cross-examining any DSS worker would have furthered her claims in this case. Mother's bare allegation of prejudice is not supported by the record.[14]

In addition, Mother argues, without further elaboration, that the DSS records to which she was denied access "were considered by" the motion court in its judgment. In her reply brief, Mother contends that the motion court's reliance in its findings of fact, conclusions of law, and judgment on the fact that an allegation of sexual abuse against Pitts was substantiated by the DSS proves that the motion court relied upon the DSS investigative records, reviewed *in camera* by the motion court, in arriving at its decision and that the motion court erred in denying her review of the investigative records while relying on the same in its decision.

There is no indication that the motion court relied upon anything contained in the DSS investigative records in making its judgment. On the contrary, at the final hearing, the motion court expressly ruled that the DSS investigative records were not admissible. No DSS records were admitted into evidence at trial. In its findings of fact, conclusions of law, and judgment, the motion court *expressly cites to the transcript of the November 10, 2008, temporary custody hearing to support its finding that the allegation was substantiated by the DSS as to Pitts.*[15] The motion court makes it clear that it was not relying on the records it reviewed *in camera* but on evidence presented by the parties. Even if the motion court had not expressly cited hearing evidence as the basis for its finding that the alleged abuse had been substantiated by the DSS, where evidence was presented during the modification hearings that a claim of abuse against Pitts was substantiated by the DSS, we will not presume that the court relied on information obtained during its *in camera* review of the investigative record.[16]

14. In fact, Mother had an opportunity to call the DSS worker who investigated the allegations against Pitts, but elected not to do it. At the final hearing, in ruling on Mother's motion in limine seeking to exclude the DSS investigative records, the motion judge stated, "I will allow examination of the workers as to who they contacted but not the contents of any testimony, or anything that's in the—in the record is not—not admissible." Thus, Mother could have called the DSS investigator regarding who was interviewed during the investigation of the alleged abuse by Pitts to support her argument that the investigation was not thorough. The only DSS investigator that testified was called by the GAL to address Mother's allegation that Daughter had been touched inappropriately, not by Pitts, but by her five-year-old stepbrother while staying at Father's house. This investigator was not involved in the investigation of the allegations against Pitts.

15. Because Mother did not provide this court with a copy of the temporary custody hearing transcript, we cannot determine whether Mother or Father introduced the evidence of the DSS's substantiation of abuse at the temporary custody hearing or if the evidence was presented for some limited purpose. When a party fails to provide this court with relevant portions of the transcript, we assume that the omitted portion does not aid her appeal. Rule 81.16(c).

16. In contrast, the dissent assumes that the motion court relied on the DSS records reviewed *in camera* because the motion court did not expressly reject a vague comment by Mother's counsel when arguing her motion in limine regarding the DSS records that "there are some items that the motion court is taking into consideration." But this ignores the motion court's express reliance on the November 10, 2008 hearing transcript as the source of

In light of the motion court's pre-hearing ruling granting Mother's motion in limine to prevent admission of the investigative records into evidence, we must assume that no evidence of the report of abuse or the resulting DSS investigation would have been presented at the final hearing had it not been for Mother's decision to put the fact of the report and the investigation into evidence. Several people, including Mother, either stated or implied at the final hearing that the allegations against Pitts had been found to have been substantiated, and Mother's attorney mentioned it in her closing argument. At the very least, Mother's testimony at the final hearing regarding the second allegation against Pitts would reasonably lead to the *inference* that the second allegation had been substantiated.

Testimony was also offered, without objection, regarding the investigation of the allegations and that Pitts had been prohibited from having contact with Daughter. Mother did not seek to have this testimony admitted for the limited purpose of showing that it was Father who made the allegations of abuse. On appeal Mother does not challenge the validity of the motion court's finding that the second allegations were substantiated; rather, she merely alleges that in light of that finding we should conclude that the motion court relied on the documents reviewed *in camera* and because the documents were relied upon, she should have been given access to those documents.[17] Mother cannot elect, after the court had already ruled that the parents would not have access to the investigative records, to put into evidence the fact that an allegation of abuse was substantiated and then attempt to use the motion court's reliance on that fact as the basis to claim that she was prejudiced by being denied access to the documents.

Further, even if Mother had been given access to the records so that she could challenge the validity of the DSS's substantiation of abuse, there is no reason to believe that the judgment of the motion court would have been different. The motion court modified physical custody of Daughter because the court found that, when confronted with evidence of possible sexual abuse of Daughter, Mother took inadequate steps to protect Daughter from the possible abuse. The evidence that Mother was on notice of the possible abuse included not only the finding by the DSS that an allegation of abuse had been substantiated but also uncontroverted evidence that Daughter had repeatedly reported the abuse to Mother or to others in Mother's presence and that at a hearing on November 10, 2008, a number of health care professionals testified to comments made by Daughter and conduct consistent with abuse. Both Mother and Pitts acknowledged that Mother did not question Pitts about the allegations of abuse. Moreover, after the second allegations, when Pitts had been ordered not to have

the evidence that the second allegation of abuse against Pitts was substantiated by the DSS. Because Mother did not provide us with the transcript of the November 10, 2008 hearing and did not fully develop the record at trial regarding the allegation that the motion court was relying on evidence outside of the record, we refuse to jump to the conclusion Mother offers and the dissent accepts. We find nothing in the record that supports the dissent's conclusion that the motion court relied on "why" the allegation was substantiated, as presumably contained in the DSS investigative records, in reaching its decision to modify visitation.

17. The dissent would find that the "motion court's judgment is not supported by substantial evidence" or in the alternative that "the motion court erroneously delegated its fact-finding responsibility to a third party." However, Mother raised neither claim in her briefs to this court and thus those issues are not before us.

any contact with Daughter, Daughter reported that she still saw Pitts when she went to Mother's house for visitation, which prompted the GAL to conclude that Pitts might not understand what "no contact" means and led her to visit Mother's home unannounced. During that visit, the GAL encountered Pitts on the property. All of this evidence supports the motion court's finding that Mother failed to take steps to protect Daughter from possible sexual abuse.

Contrary to Mother's argument, the motion court's findings do not evidence that it relied on anything in the DSS investigative records as evidence that Pitts *had in fact* abused Daughter. Rather, the motion court found it relevant that Mother took no steps to protect Daughter after she had been made aware of serious allegations of sexual abuse. The motion court noted that Mother rejected the allegation of abuse out of hand and that she instead relied exclusively on her husband's denials without taking "necessary and required steps to protect the child." Thus, to the extent the motion court "relied" on the fact that the second allegation was "substantiated," it did so, not as evidence that abuse had in fact occurred, but as evidence that Mother had been made aware of serious allegations and had failed to act on them. The fact that the motion court relied, for this limited purpose, on evidence that the sec-

ond report of abuse was substantiated is also evidenced by the fact that the motion court did not make a finding that Pitts had abused Daughter.[18] Suffice it to say that it was not an abuse of discretion to fault Mother for all but ignoring allegations that her child was being sexually abused.

■ The motion court's conclusion that Mother did not take adequate steps to protect Daughter is also supported by its findings of fact regarding evidence of the allegations of abuse. The judgment cited the testimony of the various treating and evaluating professionals and the forensic examiner that relayed Daughter's reports of abuse and behavior consistent with such allegations. This testimony was apparently presented at the November 2008 hearing, yet by the time of the final hearing in the spring of 2009, Mother still had not expressly asked Pitts about the veracity of the allegations.[19]

Because the record does not support the conclusion that the motion court relied upon the DSS investigative records in arriving at its decision and there is substantial evidence in the record provided to this court to support the judgment, Mother fails to show that she was prejudiced by the motion court's refusal to allow her access to the records, even though such

18. Under section 452.375.2(6), if the motion court had concluded that Pitts had abused Daughter, it would have been obligated to include that finding in its best-interest-of-the-child analysis in the findings of fact. It appears that the motion court came to the same conclusion as the GAL: while we may never know whether Daughter was abused, Mother's cavalier response to the allegations reflects on Mother's ability to make decisions to protect Daughter.

19. The dissent assumes that we cite this evidence to indicate that the motion court could have found that Pitts abused daughter. That

is not our point. The evidence is relevant because it indicates that the motion court found the testimony to be credible and that even after Mother was aware of the opinions of these experts, she did not act to protect Daughter. The dissent states that the majority "concedes" that the motion court did not find that Pitts abused Daughter. We willingly note that the motion court did not make its decision based on a finding that Pitts abused Daughter. Rather, the motion court relied on the fact that Mother was on notice of serious allegations of possible abuse and took inadequate steps to protect Daughter.

refusal was improper. Her second point on appeal is also, therefore, denied.

## Time Limitations for Presentation of Evidence

 Mother's final point on appeal is that the motion court abused its discretion in limiting the parties to seven and one-half hours each to put on their cases at the final hearing because Mother was unable to sufficiently present her case within the bounds of such time constraints. As acknowledged by Mother's point on appeal, time limitations placed on presentation of evidence are matters within the motion court's discretion and will only be reversed for an abuse of that discretion. *L.J.B. v. L.W.B.*, 921 S.W.2d 23, 27 (Mo.App. E.D. 1996). As long as the court notifies counsel in advance of any time limitations, they are usually upheld on appeal. *See, e.g., McAllister v. McAllister,* 101 S.W.3d 287, 291–93 (Mo.App. E.D.2003); *Brady v. Brady,* 39 S.W.3d 557, 560–61 (Mo.App. E.D. 2001); *L.J.B.,* 921 S.W.2d at 27. However, time limitations are not generally favored and "should be imposed carefully and only after consultation with counsel. If the evidence on essential points cannot be fully developed within the allotted time the court must show some flexibility." *B.J.D. v. L.A.D.,* 23 S.W.3d 793, 797 (Mo.App. E.D.2000). In all cases, an offer of proof must be made, either before the close of evidence or, if time does not permit, in a post-hearing written motion, stating what evidence would have been produced had additional time been allowed and how the party seeking to introduce that evidence was prejudiced by its being excluded. *See, e.g., Brady,* 39 S.W.3d at 560–61; *L.J.B.,* 921 S.W.2d at 27.

 In this case, the parties clearly knew about the time limitations in advance of the final hearing.

THE COURT: Now, I believe, for the record, the court is going to—has also advised the parties in chambers that each party has a total of seven and a half hours of direct or cross-examination. The clerk of this court will be keeping track of the time, and after conclusion of each direct or cross-examination, you'll be advised of how much time was used so everybody is well aware of how much time has expired and how much time remains for each party. The guardian ad litem is excluded from the limitation other than for reasonableness, which I'm sure she will be.

Mother's counsel objected to the time limitations stating that she had "multiple witnesses and some hundred or so exhibits" that Mother wanted to present to the court. After the court overruled Mother's objection, the parties proceeded to put on their evidence. Mother herself testified and then called her mother-in-law, Daughter's former and current daycare providers, an employee of the school district in which Mother resided, one of Daughter's health care providers, and a child psychologist who had examined Daughter. Mother also cross-examined witnesses called by the other parties, including an employee of the Children's Division.[20]

Mother's offer of proof that she submitted with her motion stated that Mother wished to examine, inter alia: (1) several witnesses "regarding the Division of Family Services allegations and investigation of January, 2008, and May, 2008, including what was done, and more importantly what was not done, as well as the significant delays in their investigation"; (2)

**20.** We note here, too, that Mother failed to include the transcript from one of the three days of the hearing, so we are left with an incomplete representation of the testimony Mother was able to present in support of her case.

some ten people that she claims would have testified that Pitts was not around Daughter and that they had not been contacted by the GAL; (3) over 100 character witnesses (one of whom was Pitts himself) to testify as to her and Pitts's good characters; (4) the Carroll County Prosecutor to testify that Pitts had not been charged criminally for abusing Daughter; and (5) Stefanie Kissick, to testify as to an allegation that one of Father's stepsons had touched Daughter inappropriately.

Mother provided no affidavits from any of the would-be witnesses to indicate that they would have testified in any manner that would have helped Mother's case. In fact, Kissick did testify at the hearing and stated that she found the allegations of inappropriate touching by the stepbrother to have been completely incredible and that Daughter had been coached to make the false allegations by Mother. Moreover, since the crux of Mother's case was that Pitts had been falsely accused, the best evidence had already been produced at the hearing. Pitts himself testified as to how and when he had touched Daughter. Mother also testified as to Pitts's relationship with Daughter, and Father and Stepmother testified as to what Daughter had reported to them about Pitts. The GAL had found Pitts on the property during Mother's parenting time with Daughter after Pitts had been ordered to have no contact with Daughter. Testimony was also elicited to establish that Pitts had not been charged criminally for abusing Daughter. Much of the testi-

mony Mother sought to introduce was, therefore, duplicative or irrelevant. As such, Mother has failed to show that she was prejudiced by the time limitations imposed by the motion court. Testimony has to end sometime. Mother requested to examine over one hundred additional witnesses at the hearing. This is simply not reasonable. The motion court did not abuse its broad discretion, and Mother's third point is denied.

### Conclusion

For all of the above-stated reasons, the judgment of the motion court modifying custody and support is hereby affirmed.

JAMES EDWARD WELSH, Presiding Judge, concurs.

MARK D. PFEIFFER, Judge, dissents in separate opinion.

MARK D. PFEIFFER, Judge, dissenting.

I respectfully dissent.

While the majority opinion correctly announces the standard of review dictated by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), it fails to correctly apply that standard of review to the only part of the motion court's judgment that matters—the section 452.375.6 findings in support of the motion court's custodial modification ruling. The majority opinion details other evidence "referenced" by the motion court in the motion court's description of the evidence,[1] but notably, the motion court

---

1. The majority opinion recites testimonial evidence from a therapeutic counselor, a forensic interviewer, two evaluating psychologists, Father, Stepmother, and the GAL (*Maj. Op.* at 52–53), all of which the majority opinion concludes constitutes evidence "consistent" with abuse (*Maj. Op.* at 60–61). While the majority opinion thus implies that the motion court *could* have independently made a section

452.375.6 finding that abuse had, in fact, occurred (thereby identifying a statutorily required change in circumstance to substantiate the necessity for custodial modification), the plain and simple truth is that the motion court did *not* make such a finding. After multiple pages of summarized evidence in the majority opinion supporting a finding of abuse, the majority opinion concedes: "[T]he

expressly chose not to "find" that this itemized evidence was credible enough to warrant an express "finding" of "substantiated" abuse. Instead, the "finding" of the motion court is simply that there was an "allegation" of abuse that was "substantiated by the Children's Division"[2] (and, in hindsight, we now know that such "allegation" has since been deemed to be "unsubstantiated" by the Children's Division). Consequently, Mother is penalized by the motion court for choosing not to believe the "substantiated" allegation of abuse that was later, coincidentally, determined to be "unsubstantiated"—or, stated another away—allegations that were not credible or believable.

While the majority opinion attempts to characterize or summarize the motion

court's "findings," noticeably absent from the majority opinion is the "finding" that the motion court has enumerated as the basis for a change of circumstances to warrant custody modification,[3] to-wit:

> The Court finds that [Mother] has not taken the necessary and required steps to protect [Daughter]. According to her own testimony in court, [Mother] has not even inquired of her husband if the allegations of sexual abuse of [Daughter] by Stephen Pitts are true or not.... Therefore, the Court finds that *[Mother] has accepted the denial of her husband* and has not protected her child from the ***alleged*** *sexual abuse that was* **substantiated by the Children's Division** *of Missouri Department of Social Services.*[4]

motion court did *not* make a finding that [Mother's husband] had abused Daughter." *See Maj. Op.* at 59. (Emphasis added.) Shortly after this concession, though, the majority opinion again revisits the evidence of abuse and states: "The evidence ['testimony of the various treating and evaluating professionals and the forensic examiner' (*Maj. Op.* at 59)] is relevant because it indicates that the motion court found the testimony to be credible and that even after Mother was aware of the opinions of these experts, she did not act to protect Daughter." *See Maj. Op.* at 59. Again, that is *not* what the motion court *actually* said. The motion court stated that: "[Mother] has accepted the denial of her husband and has not protected her child from the *alleged* sexual abuse *that was substantiated by the Children's Division.*" Ultimately, the motion court was aware of the testimonial opinions of the treating, evaluating, and forensic experts (that the majority opinion outlines) and did not find them credible enough to draw the conclusion that abuse had, in fact, occurred. Mother came to the same conclusion as the motion court. Though the majority opinion seems to be suggesting that the motion court could, and maybe should, have stated it was penalizing Mother for ignoring credible "opinions of these experts"—it did not. The motion court penalized Mother for refusing to protect Daughter from "alleged sexual abuse that was substantiated *by the*

*Children's Division."*—allegations of which have now been deemed "unsubstantiated" by the Children's Division.

2. Throughout this dissenting opinion, I will refer to the Children's Division of the Missouri Department of Social Services as "the Children's Division."

3. When a trial court chooses to modify custody, the trial court is statutorily obligated to itemize written findings supporting its ruling. § 452.375.6; *Rosito v. Rosito,* 268 S.W.3d 410, 416–17 (Mo.App. W.D.2008). " 'The purpose for the statutory requirement to detail the factors is to allow for more meaningful appellate review.' " *Davis v. Schmidt,* 210 S.W.3d 494, 503 (Mo.App. W.D.2007) (quoting *Boothe v. Huber,* 174 S.W.3d 712, 716 (Mo.App. W.D.2005)). When the trial court modifies a custody decree, the trial court's finding must substantiate that " 'a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child.' " *Hightower v. Myers,* 304 S.W.3d 727, 734 (Mo. banc 2010) (quoting § 452.410.1).

4. Not only does the majority opinion ignore the plain and unambiguous "finding" of the motion court, the majority opinion attempts to re-write it, stating alternatively: (1) "It appears that the motion court came to the

(Emphasis added.) Unquestionably, the "change in circumstance" that was the basis for the motion court's judgment modifying the custody decree was based upon the report detailing the investigation and conclusions of "substantiated" abuse by the Children's Division—a report that Mother could not respond to at trial because the motion court erroneously prevented her from seeing it—even though the motion court made the report the cornerstone of the basis for the judgment.

While the majority opinion tacitly admits that it was error for the motion court to withhold the Children's Division investigative records from Mother (*Maj. Op.* at 56–57), the majority opinion questions how these relevant and admissible records that the motion court relied upon, but refused to provide to Mother for rebuttal purposes, could possibly cause prejudice to Mother (*Maj. Op.* at 56–57). Unfortunately, the majority opinion fails to see the obvious answer to its inquiry.

### *Relevancy and Admissibility of the Investigative Records*

Section 210.145.16(2) states:

The court may on its own motion, or shall if requested by a party to the proceeding, make an inquiry not on the record with the children's division to determine if such a report has been made. If a report has been made, the court may stay the proceeding until the children's division completes its investigation.

Clearly, then, this statute contemplates a motion court's reliance upon the results of the investigation by the Children's Division or there would never be a necessity to stay the proceedings pending such investigation. Clearly, this motion court found that the results of the investigation by the Children's Division leading to a "substantiated" finding (that was later determined to be "unsubstantiated") were relevant, because the motion court expressly *relied* upon the investigative records detailing the basis for *why* the Children's Division made a "substantiated" finding of abuse.[5]

When the motion court told the parties below (albeit off the record, thereby necessitating Mother's trial counsel to make a record of the motion court's off-the-record comments) that the motion court intended to rely upon the investigative records in arriving at its determination in this proceeding, the motion court made those records both relevant *and* admissible. A motion court cannot reasonably suggest that records that it intends to rely upon are not thus relevant to the proceeding (i.e. if the motion court is going to rely upon the

---

same conclusion as the GAL: while we may never know whether Daughter was abused, Mother's cavalier response to the allegations reflects on Mother's ability to make decisions to protect Daughter." *See Maj. Op.* at 59. (2) "All of this evidence supports the motion court's finding that Mother failed to take steps to protect Daughter from *possible* sexual abuse." *See Maj. Op.* at 59. (Emphasis added.) To the contrary, however, the motion court *actually* found (1) the *Children's Division substantiated* a report of abuse by Mother's husband; (2) Mother's husband denies wrongdoing; (3) Mother accepts her husband's denial as true and chooses not to in-

quire or otherwise cross-examine her husband. Plainly and simply, the motion court's finding cloaks a *substantiated abuse finding by the Children's Division* as something more than mere "we may never know what happened" or "possible abuse" and penalizes Mother for not *protecting Daughter from abuse when the Children's Division substantiates it.*

5. *See* discussion *infra* regarding the colloquy between Mother's trial counsel and motion court where it was confirmed that the trial court did, in fact, intend to rely upon the investigative records of the Children's Division in arriving at its determination in this proceeding.

"why" behind the investigative conclusions of the Children's Division, Mother should have been entitled to demonstrate "why not"). And, likewise, if the records are going to be reviewed and relied upon by the motion court, it should go without saying that in order for the records to constitute evidence that the motion court can rely upon to support its ruling, they must first be admitted into evidence! Accordingly, the Children's Division investigative records were both relevant and admissible regarding what we now know to be the judgment of the motion court.

*Prejudice*

Herein lies the fatal flaw to the logic of the majority opinion on this topic. The majority opinion fails to see the prejudice of the Children's Division investigative records, because it concludes that the report summarizing the results of the investigation by the Children's Division was not actually relied upon by the motion court below in arriving at its ruling. The majority states in its opinion: "Contrary to Mother's argument, the motion court's findings do not evidence that it relied on anything in the [Children's Division] investigative records [ (*Maj. Op.* at 59) ] ... [t]he record does not support the conclusion that the motion court relied upon the [Children's Division] investigative records in arriving at its decision [ (*Maj. Op.* at 59) ].... " And yet, as Mother pointed out in her briefing on appeal, the transcript reflects just the opposite.

Mother's trial counsel had filed a motion in limine to prohibit any evidence whatsoever from representatives from the Chil-

dren's Division or any testimony about the results of any past or ongoing investigations. In particular, Mother's trial counsel argued as follows at the pre-trial conference:

The additional argument we have in our motion [in limine], Your Honor, is to preclude any evidence from Division of Family Services or the records of Division of Family Services. As this court is aware, the allegation of abuse that pertains to this cause of action, the initial one was January of 2008, which was returned unsubstantiated as to my client and her husband, and then a subsequent allegation of May 19th, 2008, which was returned unsubstantiated to my client and substantiated as to her spouse.[6] And I believe in presenting this evidence to the Court, the Court has now had an opportunity to have the documents *in camera*, we had requested the records through DFS, we had requested the information through subpoenaed testimony, and that was denied, as well. We have had a motion to compel hearing, and that was denied. We filed a motion that they be produced *in camera*, and the Court did grant that, and we have made requests by oral and written motion to this court to allow us to review those documents that are being held *in camera* in preparation for this trial and have not been allowed that opportunity. I believe this creates a great injustice to my client.

I would ask the Court to review our motion and the items that we set forth in that motion, and in particular would state that in order to present evidence

---

**6.** This second allegation of abuse against Mother's husband was later determined to be "unsubstantiated" by the Children's Division. This fact is not in dispute. Both parties have stipulated to its veracity on appeal. So, while the motion court criticized Mother for believing her husband's denial of abuse instead of acting upon the "substantiated" allegation of abuse by the Children's Division and found Mother's beliefs to be so unreasonable so as to justify a change in circumstances that warranted custodial modification, it turns out that Mother's "motherly instincts" may not have been so unreasonable after all.

to this court, it is mandatory that we have an opportunity to know what the allegations are and what the investigation has been so that we may either further bolster that information or refute that information, and *the Court has indicated off the record that the Court has reviewed these records, although not word for word, and that there are some items that the Court is taking into consideration.* And I believe based upon that, I have an absolute right to review those records and then also to question the DFS workers with regard to not only what they have done but also *why they came to a substantiated conclusion.*

(Emphasis added.)

After this dialogue with the motion court, the motion court could have denied the statements attributed to it that were allegedly made "off the record." Instead, the motion court's response was simply: "Thank you, Ms. Duchardt [Mother's trial counsel]." [7]

Thereafter, the motion court announced its ruling as follows:

All right. In chambers, as well, the Court advised the parties how the Court was going to rule. We need to put this on the record. The Court believes under—under the law, that since criminal charges have not been filed, that the reports are confidential and should not be turned over to either of the parties.[8] So the Court has advised the parties that's going to be the Court's ruling. The Court has further advised [Mother], who is desirous of seeing the report, that I will allow examination of the workers as to who they contacted *but not the contents of any testimony, or anything that's in the—in the [Children's Division's investigative records]—not admissible.* So Count II of the motion in limine will be overruled to that extent.

(Emphasis added.)

So, the end result is that Mother's trial counsel confirmed the motion court's state-

7. First, the majority opinion concludes that there is nothing in the record indicating that the motion court relied upon anything in the investigative records and, instead, the motion court made it clear that it was *not* relying upon the investigative records. I respectfully submit that that is an unreasonable characterization of the transcript. The only thing the motion court made clear is that it would *not* permit *admission* of the records into evidence. But, as illustrated by the transcript colloquy between Mother's trial counsel and the motion court, the motion court still intended to "take into consideration" "some items" from its *in camera* review of the investigative records that the motion court refused to admit into evidence or otherwise permit Mother to rebut the contents thereof. Second, the majority opinion states: "[T]he motion court expressly cites to the transcript of the November 10, 2008 temporary custody hearing to support its finding that the allegation was substantiated by the [Children's Division] as to Pitts." *See Maj. Op.* at 57. Importantly, this statement by the majority opinion

misses the point of the content of the motion court's reliance upon the *in camera* reviewed investigative records. It's not the fact *that* the Children's Division substantiated the abuse allegation—it's *why* they did so and the investigative records reveal the "why" behind the "substantiation." Mother never contested that the Children's Division "substantiated" the abuse allegation against her husband (which is why the majority opinion's reference to a missing temporary custody hearing transcript is a red herring). Mother merely wanted to rebut the "why" behind the "substantiation" since the motion court had indicated that it was going to rely upon the "why" contained in the investigative records.

8. *See Pitts v. Williams,* 315 S.W.3d 755 (Mo. App. W.D.2010), for this court's discussion of the error of the motion court's analysis relating to the discoverability of the investigative records as well as the majority's discussion today regarding Mother's right to accessibility of the investigative records in question.

ment off the record that the motion court had reviewed the investigative records and that the motion court had indicated to the parties that it was going to "take into consideration" certain items from that record (which it did), but the motion court would not permit Mother access to the information the motion court was relying upon to make a "finding" that justified custodial modification.

To state the procedural substance of what happened is to recognize the injustice of it.

Had the motion court followed up its recitation of the lengthy evidence in this case with express findings relating to credibility and its conclusion that evidence independent from the Children's Division's investigative records justified a "finding" of "substantiated" abuse, I would have no complaint with the judgment. That is not, however, what the motion court did.

Instead, the motion court erroneously delegated its responsibility to a third party—the Children's Division. Then, because this third party "substantiated" allegations of abuse (at least at that juncture), the motion court concluded that it was unreasonable for Mother to refuse to believe those allegations and to take no steps to protect Daughter from this "alleged" abuse, an "allegation" later determined by the Children's Division to be "unsubstantiated."

Noticeably absent from the motion court's statutory factor itemization is any statutory factor finding by the motion court that abuse had, in fact, occurred— this, even though the motion court heard three days of testimony on that very topic[9]—such that the most the motion court was willing to conclude on the topic was that someone else other than the motion court (i.e. Children's Division) concluded that abuse was substantiated—the same agency that has subsequently concluded that the abuse allegations are, in fact, unsubstantiated.

The majority opinion's ruling today sets a dangerous precedent. Although it is the job of the motion court, not the Children's Division, to hear evidence and detail statutory factor findings, this court's majority ruling today permits the motion court to effectively delegate its responsibility to the Children's Division; then, this court's majority ruling today permits the motion court to criticize Mother for failing to take the report of abuse by the Children's Division (a report that is erroneously not provided to Mother) seriously enough to protect Daughter from abuse that the Children's Division, not the motion court, "substantiates" (and later "unsubstantiates"), and the motion court refuses to let Mother see and refute the allegations of the very report that the motion court relies upon to punish Mother.

Erroneously, the majority opinion's ruling today authorizes a motion court to

---

9. Though the motion court's judgment meticulously summarizes the evidence, including opinions of numerous witnesses testifying to their belief that abuse had occurred, nowhere in the thirteen-page judgment is there any "finding" by the motion court that abuse had, in fact, occurred—not in the section 452.375 statutory factor itemization, not in the findings of fact, not in the conclusions of law. This is significant. If the evidence of abuse was credible, the abuse would have been "found" by the motion court to exist. Absent

such a "finding" of abuse, we are left with the opposite conclusion—that the motion court did not find the evidence of abuse credible enough to warrant a "finding" of abuse. Coincidentally, Mother came to the same conclusion—that the allegations of abuse were just that ... allegations—but in her opinion, not credible enough to warrant a "finding" in her mind that the allegations were, in fact, true. For that, Mother was penalized by the motion court's judgment.

wrongfully withhold documentation or information from a party even when the motion court uses that very documentation or information against the party.

Erroneously, the majority opinion's ruling today allows the motion court to delegate its fact-finding responsibility to a third party—a third party who has subsequently changed its mind about the veracity of the facts that the motion court has relied upon to punish Mother.

Because the motion court relied upon the records of the investigation of the Children's Division in framing its statutory "findings" to justify custodial modification, and those records were not admitted into evidence, the motion court's judgment is not supported by substantial evidence. Alternatively, because the motion court erroneously delegated its fact-finding responsibility to a third party, whose investigation and resulting conclusions could not be challenged by Mother, the motion court erroneously applied the law. Under either scenario, I would reverse the motion court's judgment.

I would hope that if the motion court was convinced to find a "change in circumstances" on the basis of a "substantiated" report by the Children's Division, the motion court would likewise find another "change in circumstances" upon discovering that the Children's Division has now concluded that the report of abuse was "unsubstantiated."[10]

10. I would also note that while the majority opinion is critical of Mother's appellate briefing to this court, I join with the majority's conclusion that the facts and arguments pertinent to Mother's assertion of error in Mother's brief are readily discernable and, as such, agree that we should exercise our discretion to review Mother's appeal. *See Cubit v. Accent Mktg. Servs., LLC,* 222 S.W.3d 277, 280 (Mo.App. W.D.2007) ("Under such circumstances [arguments readily discernable], appellate courts have discretion to review an appeal on the merits even if the brief fails to comply with Rule 84.04."). I would give Mother more credit for her appellate brief than does the majority opinion. Specifically, Mother points us to the transcript of the pretrial hearing where the motion court's off-the-record statement, about considering the very investigative records that it refused to permit Mother to see, occurred. Mother argues that

there is inadequate evidence in the record to support the judgment, and Mother expressly points to the fact that the evidence upon which the motion court relies was not "in the record"—namely, the records detailing the investigation and basis for the "substantiated" conclusion by the Children's Division (i.e. the prejudice of the motion court's erroneous action). I do not, therefore, agree with the majority opinion's statement (*see Maj. Op.* at 59) that Mother has failed to raise the arguments that (1) the motion court's judgment is not supported by substantial evidence and (2) the motion court erroneously delegated its fact-finding responsibility to a third party. Mother's entire argument on appeal is that she was prejudiced by the substance of the erroneous manner in which the motion court relied upon the investigative records of the Children's Division. Mother's appellate arguments are, thus, readily discernible.